Kenneth Dwain Adkins v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-288-CR

KENNETH DWAIN ADKINS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

OPINION ON APPELLANT’S 

PETITION FOR DISCRETIONARY REVIEW

------------

We withdraw our December 19, 2002 opinion and judgment and substitute the following in its place.

INTRODUCTION

Appellant Kenneth Dwain Adkins was indicted for the offense of possession of a controlled substance with intent to deliver.  The indictment included a deadly weapon paragraph, an enhancement paragraph, and three habitual offender paragraphs.  
See
 
Tex. Penal Code Ann.
 § 12.42(b), (d) (Vernon Supp. 2002);
 Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3g(a)(2) (Vernon Supp. 2002).  Appellant filed a motion to suppress, which the trial court denied.  Appellant pled not guilty to the charged offense, but the jury found him guilty of the lesser-included offense of possession of a controlled substance.  The jury also found that appellant used or exhibited a deadly weapon in committing the offense.  The trial court found two of the habitual offender paragraphs to be true and assessed punishment at forty years’ confinement.  
See
 
Tex. Penal Code Ann.
 § 12.42(d).  In five issues, appellant complains that:  (1) the trial court erred when it overruled his motion to suppress and corresponding objection at trial; (2) the trial court erred when it denied his motion for directed verdict; (3) the trial court admitted statements he made to the arresting officers in violation of 
Miranda
; and (4) the trial court should have set aside the indictment for failure to afford him a speedy trial.  We reform the trial court’s judgment and affirm it as reformed.

BACKGROUND

On October 29, 1998, Officer Ray Morales of the Arlington Police Department was dispatched to a 7-Eleven convenience store to meet with Joseph Hayworth.  Hayworth, who had previously provided Officer Morales with reliable information, told Morales that he had seen a brown prescription bottle full of narcotics fall on the floorboard of appellant’s white 1988 Chevy truck as appellant was getting out of it.  Hayworth informed Morales that the truck was located in a parking lot in front of a CiCi’s Pizza restaurant, a half-block to the north of the 7-Eleven.  Officer Dale Horton arrived, and he and Officer Morales parked their patrol cars and walked to the parking lot.

Appellant was not present when Horton and Morales reached his truck.  Through the window, using flashlights, Officer Morales could not see any drugs, but noticed a wooden stick lying on the seat.  Morales, who had encountered appellant previously, saw appellant and another male walking toward Cici’s Pizza.  Officer Morales called out to appellant. Appellant continued towards the restaurant.  After Morales called to appellant twice, appellant stopped, reached his hand inside his pants pocket, and told the officers that he didn’t have any drugs.  Officer Morales performed a patdown on appellant, looking for any weapons.  Officer Horton then asked appellant if the truck was his and if he had driven it there.  Appellant responded yes to both questions.  Appellant asked if there was a problem, and began to walk toward his truck.  The officers followed appellant and his companion towards the truck. 

When they reached the truck, Officer Horton asked appellant who the wooden stick belonged to, and appellant said it was his.  Appellant asked the officers if they wanted to see the stick and unlocked the passenger side door with a remote keyless entry device.  Officer Horton instructed appellant, however, not to get in the truck.  Despite Officer Horton’s instruction, appellant entered the truck and emerged with the stick.  Both officers testified that they both drew their guns and ordered appellant to drop the stick.  Appellant stood there holding the stick and, after two or three seconds, dropped it.

After appellant dropped the stick, the officers arrested him, without obtaining a warrant, for unlawfully carrying a weapon.  
See
 
Tex. Penal Code Ann.
 § 46.02(a) (Vernon Supp. 2002).  During the search incident to arrest, Officer Morales searched the passenger compartment of the truck.  Officer Morales folded down the seat and found a brown prescription bottle behind the seat on the driver’s side.  The bottle contained twenty-five individually wrapped rocks of cocaine.

DISCUSSION

Speedy Trial

In his fifth issue, appellant complains that his constitutional right to a speedy trial under the Sixth Amendment was violated.  Because a claim of a speedy trial violation potentially entitles appellant to a dismissal instead of a new trial, we will discuss it before his other issues.  
See Brecheisen v. State
, 4 S.W.3d 761, 764-65 (Tex. Crim. App. 1999) 
(“[T]he only possible remedy for a violation of the Sixth Amendment right to a speedy trial is dismissal.”).

The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution and applies to the states through the Fourteenth Amendment. 
 
Klopfer v. North Carolina
, 386 U.S. 213, 222-23, 87 S. Ct. 988, 993 (1967).  Additionally, our own state constitution and code of criminal procedure guarantee a defendant’s right to a speedy trial.  
Tex. Const. 
 Art. I § 10;
 Tex. Code Crim. Proc. Ann.
 art. 1.05 (Vernon Supp. 2002).  The right to a speedy trial under the Texas Constitution has been interpreted to be congruent with the right guaranteed by the federal constitution; thus, we use the same balancing test used by federal courts to determine if a violation of the right has occurred.  
Harris v. State
, 827 S.W.2d 949, 956 (Tex. Crim. App.), 
cert. denied
, 506 U.S. 942 (1992).

In 
Barker v. Wingo
, the United States Supreme Court set forth the balancing test that federal courts use in evaluating speedy trial claims. 
 407 U.S. 514, 530-32, 92 S. Ct. 2192-93 (1972)
.  Under this test, courts must weigh and then balance four factors:  (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant.  
Id
.
; 
State v. Munoz
, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).  No one factor is deciding in determining whether a defendant has been deprived of the right to speedy trial, and courts must consider all of the factors together along with any other relevant circumstances.  
Barker
, 407 U.S. at 533, 92 S. Ct. at 2193.  The appropriate standard of review of a trial court's decision on a speedy trial claim is a bifurcated standard of review.  
Munoz
, 991 S.W.2d at 821.  The reviewing court applies an abuse of discretion standard for the factual components and a de novo standard for the legal components of the trial court's decision.  
Id
.

Length of Delay

To trigger a speedy trial analysis, the defendant must demonstrate that the delay is of sufficient length to be considered presumptively prejudicial under the circumstances of the case.  
See Barker
, 407 U.S. at 530, 92 S. Ct. at 2192; 
Schenekl v. State
, 996 S.W.2d 305, 312 (Tex. App.—Fort Worth 1999), 
aff’d
, 30 S.W.3d 412 (Tex. Crim. App. 2000).  The length of the delay is measured from the time of arrest until the time of trial.  
Schenekl
, 996 S.W.2d at 312 (citing 
Emery v. State
, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1192 (1995)).  Although there is not a specific length of time that triggers a speedy trial analysis, some courts presume that a delay longer than eight months is prejudicial.  
Harris
, 827 S.W.2d at 956; 
Schenekl
, 996 S.W.2d at 312.  In this case, appellant was arrested on October 29, 1998.  The case proceeded to trial on June 26, 2001, about thirty-two months later.  The State correctly concedes that this period is sufficient to trigger our analysis of the remaining 
Barker
 factors.  
See Schenekl
, 996 S.W.2d at 312.

Our analysis of the length of delay does not end with the conclusion that it is presumptively prejudicial for purposes of triggering review of the other 
Barker
 factors.  We must also consider whether the delay as a whole is excessive based on the circumstances of the case.  
See Zamorano v. State
, No. 1442-00, slip op. at 6, 2002 WL 31018611, at *2-3 (Tex. Crim. App. September 11, 2002).  The United States Supreme Court has stated that “the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.”  
Barker
, 407 U.S. at 531, 92 S. Ct. at 2192.  This case is a “plain-vanilla,” single-defendant possession and possession with intent to deliver case.  We hold that on the facts of this case, the almost thirty-two month delay weighs against the State in our analysis of the 
Barker
 factors.

Reason for the Delay

Once a court determines that the length of the delay is sufficient to trigger a speedy trial analysis, it is the State’s burden to show a reason to excuse the delay.  
Phillips v. State
, 650 S.W.2d 396, 400 (Tex. Crim. App. 1983); 
Haney v. State
, 977 S.W.2d 638, 642 (Tex. App.—Fort Worth 1998, pet. ref’d), 
abrogated in part on other grounds
, 
Howland v. State
, 990 S.W.2d 274 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 887 (1999).  In this case, appellant was originally indicted for possession of a controlled substance on February 11, 1999.  Appellant was subsequently re-indicted five times.
(footnote: 1)  For each pending indictment, the State announced that it was ready for trial.  The record reveals that the State never requested a continuance.  The only continuance that was ever requested in any of the pending cases was filed by appellant while the first indictment was pending, on May 21, 1999.  Despite numerous settings, the case did not go to trial until June 26, 2001.  The trial court, having been recently assigned to this case, indicated at the pretrial hearing that he did not know why this case did not go to trial despite the numerous settings.

The State asserts that the delay was a result of an overcrowded trial docket and, thus, there was a neutral reason for the delay.  
See Barker
, 407 U.S. at 531, 92 S. Ct. at 2192; 
Schenekl
, 996 S.W.2d at 312; 
Parkerson v. State
, 942 S.W.2d 789, 791 (Tex. App.—Fort Worth 1997, no pet.). The State never moved for a continuance and filed a notice of ready after each re-indictment; the docket sheets do not indicate why this case did not go to trial on the first eight setting dates.  Under these facts, the State asserts that we should assume that the case simply was never reached.  The fact that the case was not reached does not necessarily reflect, however, that the trial docket was crowded.  The record does not show which other cases were reached in front of this case or how cases are prioritized in this particular trial court.  In light of these omissions in the record, we cannot conclude that the State has met its burden of showing a reason for the delay.  Thus, the second 
Barker
 factor in this case also weighs against the State.

Assertion of the Right to Speedy Trial

The third factor to consider is whether the defendant asserted his right to a speedy trial.  This factor is given “strong evidentiary weight.”  
See Barker
, 407 U.S. at 531, 92 S. Ct. at 2192; 
Haney
, 977 S.W.2d at 642.  Failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial.  
Schenekl
, 996 S.W.2d at 313.  Further, if a defendant asserts his speedy trial right but requests a dismissal instead of a trial, his claim will be attenuated.  
Id
.

In this case, thirty-two months passed between appellant’s arrest and his trial.  Appellant did not assert his right to a speedy trial until June 8, 2001, a mere eighteen days before the case went to trial.  When he did assert his right to a speedy trial, he did not request a trial, but requested that the indictment be dismissed with prejudice.  Because appellant waited until just before trial to assert his rights and because he “moved to dismiss rather than asking for a speedy trial, . . . the third 
Barker
 factor . . . weigh[s] against him.”  
Schenekl
, 996 S.W.2d at 312; 
see Barker
, 407 U.S. at 531-32, 92 S. Ct. at 2192-93; 
Haney
, 977 S.W.2d at 642.

Prejudice

The final factor to consider is whether the delay prejudiced the defendant.  Prejudice should be determined in light of the interests the speedy trial right was designed to protect.  
Barker
, 407 U.S. at 532, 92 S. Ct. at 2193.  The right was designed to prevent: (1) oppressive pretrial incarceration; (2) anxiety over the pending charges; and (3) impairment of an accused’s ability to present a defense.  
Harris
, 827 S.W.2d at 957; 
Schenekl
, 996 S.W.2d at 313.  Under this factor, it is the defendant’s initial burden to make a showing of prejudice.  
Schenekl
, 996 S.W.2d at 313.

Appellant has failed to make an initial showing of prejudice.  First, appellant had been released on bond pending trial and, thus, did not suffer an extensive pretrial incarceration.  
See Schenekl
, 996 S.W.2d at 313-14; 
Parkerson
, 942 S.W.2d at 792.  Second, appellant did not offer any evidence in support of his motion asserting his speedy trial right.  As a result, there is nothing in the record to tell us what level of anxiety, if any, appellant suffered as a result of the thirty-two month delay.  Finally, appellant has not shown how the delay impaired his defense.  Appellant’s counsel made only the bare assertion at the pretrial hearing that it was “pretty hard to get witnesses together . . . after all this time.”  The fact that it might have been difficult to procure witnesses, however, does not equate to those witnesses being unavailable.  Even assuming that witnesses were unavailable, appellant did not inform the trial court of who those witnesses were, how their testimony would have been relevant, and what efforts he had made to get them to trial.  
See Harris v. State
, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); 
Meyer v. State
, 27 S.W.3d 644, 650 (Tex. App.—Waco 2000, pet. ref’d).  Thus, the final 
Barker
 factor weighs against appellant.

In conclusion, we believe the 
Barker
 factors, when applied to the facts in this case, weigh in favor of the State.  Although the first and second factors weigh against the State, the third and fourth factors weigh more heavily against appellant.  We have previously stated that “[w]hen the failure to assert the right [to speedy trial] is made so late and never heard until trial, it weakens all the other factors because they are so dependent upon the assertion.”  
Clarke v. State
, 928 S.W.2d 709, 718 (Tex. App.—Fort Worth 1996, pet. ref’d) (op. on reh'g); 
see Haney
, 977 S.W.2d at 643.  For these reasons, we hold that the trial court did not err in denying appellant’s motion to dismiss based on the violation of appellant’s right to a speedy trial.  Accordingly, appellant’s fifth issue is overruled.

Legality of Appellant’s Arrest

In his first issue, appellant complains that the trial court erred in denying his motion to suppress and overruling his subsequent objection at trial because the wooden stick and drugs in this case were seized incident to an illegal arrest.

Standard and Scope of Review

We review the denial of a motion to suppress by giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  When the trial court does not make explicit findings of historical facts, we review the evidence in the light most favorable to the trial court's ruling.  
Id
. at 327-28.  In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996).  However, this general rule is inapplicable where, as in this case, the suppression issue has been relitigated by the parties during a trial on the merits.  
See id
.

Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures.  
U.S. Const
. amend. IV.  For an arrest to be justified under the Fourth Amendment, it must be accompanied by probable cause to believe that a person has engaged in or is engaging in criminal activity.  
Henry v. United States
, 361 U.S. 98, 102, 80 S. Ct. 168, 171 (1959).  In most cases, an officer should let a magistrate make the determination of whether probable cause exists and obtain a warrant before an arrest is made.  
See Randall v. State
, 656 S.W.2d 487, 490 (Tex. Crim. App.1983); 
Throneberry v. State
, 72 S.W.3d 389, 393 (Tex. App.—Fort Worth 2002, pet. dism'd).  Warrantless arrests, however, may be reasonable under the Fourth Amendment if the circumstances surrounding the arrest make it impracticable for a peace officer to take the time to procure a warrant.  
See Smith v. State
, 739 S.W.2d 848, 852 (Tex. Crim. App. 1987).  In Texas, warrantless arrests are authorized in specific situations that are set out in the code of criminal procedure.  
See
 Tex. Code Crim. Proc. Ann.
 arts. 14.01-.06 (Vernon 1977 & Supp. 2002); 
Subia v. State
, 836 S.W.2d 711, 713 (Tex. App.—El Paso 1992, no pet.).  For example, a peace officer in Texas may arrest a person without a warrant if that person commits an offense in the officer’s presence or within the officer’s view.  
See
 Tex. Code Crim. Proc. Ann.
 art. 14.01(b).

In reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officer at the time of the arrest. 
Atkins v. State
, 919 S.W.2d 770, 773-74 (Tex. App.—Houston [14
th
 Dist.] 1996, no pet.).  Whether probable cause exists is determined by considering the totality of the circumstances.  
See State v. Parson
, 988 S.W.2d 264, 267 (Tex. App.—San Antonio 1998, no pet.); 
Atkins
, 919 S.W.2d at 773-74.  In determining whether the officers had probable cause to arrest appellant, this court must determine whether the officers reasonably believed appellant committed an offense in their presence, not whether the evidence is sufficient to convict appellant of that offense.  
See Givens v. State
, 949 S.W.2d 449, 451 (Tex. App.—Fort Worth 1997, pet. ref’d); 
see also
 40 
George E. Dix 
& 
Robert O. Dawson, Texas Practice: Criminal Practice and Procedure 
§ 9.51 n. 5 (2d ed. 2001) (noting that “[t]he [court of criminal appeals] has long adopted the position that the validity of [an] arrest does not turn upon whether the arresting officer was ultimately correct but rather upon whether he had probable cause to believe that an offense was being committed”).

Unlawful Carrying of a Weapon

Appellant complains that his warrantless arrest was illegal, that is, not supported by probable cause, because the stick is not an illegal weapon under chapter 46 of the penal code.  Under that chapter, a person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club.  
Tex. Penal Code Ann.
 § 46.02(a) (Vernon Supp. 2002).  A “club” is defined in that chapter as “an instrument that is specially designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with the instrument.”  
Id
. § 46.01(1).  Appellant specifically contends that the wooden stick is not a “club” because  it was not “specially designed, made, or adapted” to cause serious bodily injury or death.  
See id
.

The wooden stick was admitted into evidence at the suppression hearing. The stick is approximately an inch and a half in diameter and eighteen inches in length.  A hole is drilled through one end with a loop made of string running through the hole.  The wooden stick is covered with visible scratches and marks, some deep, which appear to be animal bite marks.  Appellant testified at the suppression hearing and explained that he used the stick when he trained his dogs—rottweilers and pit bulls.  He would throw the stick for the dogs to retrieve and would use the stick to play “tug of war” with the dogs.  Officer Morales testified that, in his opinion, the string attached to the handle is an adaptation that makes the stick a “club.”  He testified that a person could place a hand through the string, grasp the stick, and strike at a person without losing control.  Officer Morales further testified that the wooden stick is capable of causing serious bodily injury or death.

In 
Alexander v. State
, the defendant was prosecuted under section 46.02 for carrying a twelve-inch motorcycle chain that had a nylon cord tied around the last link.  617 S.W.2d 269, 270 (Tex. Crim. App. [Panel Op.] 1981).  In that case, the court of criminal appeals stated:

The fact that an object is capable of inflicting serious bodily injury or death alone does not bring the object within the definition of club set forth in [section] 46.01 . . . .  As the practice commentary to [section] 46.02 . . . notes:

“Instruments readily capable of inflicting serious injury but not specifically designed to do so, such as baseball bats and rolling pins, are excluded[;] 
if a person carrying one of them has intent to use them to inflict injury and his criminal design progresses far enough, however, he can be prosecuted for an attempted or completed assault
 . . . ”

In this case, there is absolutely no evidence that the appellant carried about his person an instrument 
specifically designed, made or adapted for the purpose
 of inflicting serious bodily injury or death.  
We cannot infer from the presence of the nylon cord alone that this "adaption" was accomplished for the specific purpose of inflicting serious bodily injury or death
.

Alexander
, 617 S.W.2d at 270
 (first and third emphases added).  In 
Coleman v. State
, our sister court in Dallas held that a hickory rod, similar in size and shape to the stick in this case, that had a leather thong tied through the handle is not a “club” under section 46.02.  790 S.W.2d 369, 370 (Tex. App.—Dallas 1990, no pet.).

Following 
Alexander
 and 
Coleman
, we cannot conclude that the wooden stick the officers saw lying on the seat of appellant’s truck is a “club” as defined in section 46.01 of the penal code.  The presence of the string is not a special adaptation for the purpose of causing serious bodily injury or death.  While the presence of the string might make the stick easier to use for the purpose of inflicting injury or death, we cannot conclude this adaptation was specifically for that purpose.  
See Alexander
, 617 S.W.2d at 270.  The marks on the stick are clearly visible even from a distance.  In addition, the marks appear to have been created by a sharp object or objects, such as animal teeth; we cannot see how the marks could have resulted from striking a human. As a result, we hold that the officers in this case could not have reasonably believed that appellant committed the offense of unlawful carrying of a weapon and, thus, did not have probable cause to arrest appellant for that offense.
(footnote: 2)
Assault

Although we have concluded that the officers did not have probable cause to arrest appellant for unlawfully carrying a weapon, our discussion cannot end here.  In reviewing a trial court’s decision on a motion to suppress, appellate courts must affirm the decision if it is correct on any theory of law that finds support in the record.  
Roquemore v. State
, 60 S.W.3d 862, 866 (Tex. Crim. App. 2001); 
Pettigrew v. State
, 908 S.W.2d 563, 567 (Tex. App.—Fort Worth 1995, pet. ref’d).  The State argues that although the officers arrested appellant for committing the offense of unlawful carrying of a weapon, the officers could have arrested appellant for aggravated assault because he threatened the officers with the stick.

A person commits the offense of assault if the person intentionally or knowingly threatens another with imminent bodily injury.  
Tex. Penal Code Ann. 
 § 22.01(a)(2) (Vernon Supp. 2002); 
Donoho v. State
, 39 S.W.3d 324, 328 (Tex. App.—Fort Worth 2001, pet. ref’d).  Aggravated assault occurs if the person commits an assault and uses or exhibits a deadly weapon during the offense.  
Tex. Penal Code Ann.
 § 22.02(a)(2) (Vernon 1994); 
Donoho
, 39 S.W.3d at 328. 

Absent proof of sham or fraud, an arrest that is unlawful for the offense for which a person was arrested is valid when the crime for which the person was arrested and a crime the police had probable cause to believe the person committed are closely related.  
Warrick v. State
, 634 S.W.2d 707, 709 (Tex. Crim. App. [Panel Op.] 1982); 
Reynolds v. State
, 902 S.W.2d 558, 560 (Tex. App.—Houston [1
st
 Dist.] 1995, pet. ref'd).  For example, this court has held that an unlawful arrest for driving while intoxicated was nevertheless valid because the officer had probable cause to arrest the defendant for public intoxication.  
Jones v. State
, 949 S.W.2d 509, 516 (Tex. App.—Fort Worth 1997, no pet.).

In this case, the arrest for unlawful carrying of a weapon was based on appellant’s possession of the stick.  The State’s arguments in support of the arrest on the basis of aggravated assault focus on appellant’s use of the stick during the officers’ investigation of his possession of the stick.  Accordingly, we believe that the two offenses are closely related.  Furthermore, there is no evidence of any “sham or fraud” by the officers.  Therefore, we will address the State’s alternative argument.  However, because we hold that the officers had probable cause to arrest appellant for the lesser-included offense of assault, we do not need to address whether the officers had probable cause to believe the stick is a deadly weapon.
  We will instead focus on whether the officers had probable cause to believe that appellant intentionally or knowingly threatened either of them with imminent bodily injury.  
See
 
Tex. Penal Code Ann. 
§ 22.01(a)(2).

A threat is not limited to a spoken intent to do violence.  
McGowan v. State
, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984); 
Preston v. State
, 675 S.W.2d 598, 601 (Tex. App.—Dallas 1984, pet. ref’d), 
cert. denied
, 474 U.S. 982 (1985).  Threats may be communicated by actions, speech, or conduct.  
McGowan
, 664 S.W.2d at 357.  A threat even may include an offer to use future force.  
See
, 
e.g
., 
Berry v. State
, 579 S.W.2d 487, 489 (Tex. Crim. App. 1979); 
Hillburn v. State
, 627 S.W.2d 546, 548 (Tex. App.—Amarillo 1982, no pet.).  The focus of the offense of assault is whether the actor possessed the requisite intent to threaten.  
Trevino v. State
, 752 S.W.2d 735, 736-37 (Tex. App.—Eastland), 
pet. dism’d
, 759 S.W.2d 142 (Tex. Crim. App. 1988) (citing 
Dues v. State
, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982)).  It is insufficient to show that someone was frightened by the actor’s conduct.  
See Dues
, 634 S.W.2d at 305; 
Trevino
, 752 S.W.2d at 736-37; 6
 Michael B. Charlton, Texas Practice: Criminal Law
 § 13.2 (2d ed. 2001); 
see also Williams v. State
, 827 S.W.2d 614, 616 (Tex. App.—Houston [1
st
 Dist.] 1992, pet. ref’d) (comparing robbery statute that requires “plac[ing]” another in fear with the assault statute).  Thus, there must at least be evidence of some overt conduct by the defendant that suggests he acted with an intent to threaten.

The evidence relevant to our consideration of whether appellant threatened the officers is evidence of appellant’s actions when he and the officers reached the truck.  Officer Horton’s relevant testimony at the suppression hearing is as follows:

[DEFENSE COUNSEL:]  Is it your testimony that contrary to your commands [appellant] entered the vehicle?

[HORTON:]  Yes, sir.

[DEFENSE COUNSEL:]  And emerged with the stick in his hand?

[HORTON:]  Yes, sir.

[DEFENSE COUNSEL:]  Why did he do that? Can you tell us?

[HORTON:]  I have no idea.

[DEFENSE COUNSEL:]  Was he attempting to show you what the stick was for or explain what he said – 

[HORTON:]  
In my opinion he was attempting to come after me with the stick.
  [Emphasis added.]

At trial, Officer Horton testified:

[PROSECUTOR:]  . . . Explain to the jury what he did next.

[HORTON:]  He–he reaches for the handle and says, “Do you want me to get the club?” 

And I told him, “No, don’t get in the vehicle.”

[PROSECUTOR:] Are you this close to him at this point?

[HORTON:]  I am probably closer than what you are, probably right there.

[PROSECUTOR:]  Probably about three feet away?

[HORTON:]  Yes, sir.

[PROSECUTOR:]  He wants to go in and get the club, and you are telling him no?

[HORTON:]  
I told him no three times.  I told him not to enter the vehicle.

[PROSECUTOR:]  What happens next?

[HORTON:]  I guess he flicked the alarm . . . .  
And the door flew open, the passenger door, and it looked like he dove in the vehicle. . . .  I saw him grab the club
, and at that point –

[PROSECUTOR:]  Go ahead and grab that club –

[HORTON:]  As soon as – 
he flings the door open, he jumps in and grabs the club like this
.

[PROSECUTOR:]  And the door kind of swung out blocking you?

[HORTON:]  Yeah, blocking me.

[PROSECUTOR:]  Okay.  What happens at this point?

[HORTON:]  Panic.

[PROSECUTOR:]  At this point were you afraid for your safety?

[HORTON:]  Yeah.  At that point I couldn't understand what was going on because I saw the club, and it was like, what is he doing.  It was like panic mode.

[PROSECUTOR:]  And he had the club in his hand?

[HORTON:]  Yes, sir.

[PROSECUTOR:]  Demonstrate that.

[HORTON:]  He takes the club and he's inside the vehicle with the club.  Let me say this.  At the time he's got the club like this, I'm already drawing my weapon because I know there is a weapon – I know there is a club in the car.  
He comes out of the vehicle like this with the club just like this
.

[PROSECUTOR:]  What do you do at this time?  

[HORTON:]  I am backing up and telling him to drop the club, and I have got my gun sights right on him.

[PROSECUTOR:]  
In your opinion was he coming at you in a menacing manner
?

[HORTON:]  
In my opinion he was coming at me.

. . . .

[PROSECUTOR:]  How many times did you have to tell him to drop [the stick] before he dropped it?

[HORTON:] 
 I believe I told him two or three times
.  I remember the first time and I remember I was walking back and shouting at him, “Drop the club.”

[PROSECUTOR:]  At that point what happened?

[HORTON:] 
 As he walked forward I walked backward
.  He saw me with my gun pointed, and he dropped the club.  [Emphasis added.]

When appellant opened the truck, Officer Morales was standing near the back of the truck, calling in the license plate number.  At the suppression hearing, Officer Morales testified:

[PROSECUTOR:] So I believe where you left it, Officer, [appellant] had opened the door – passenger lock with the remote control.

[MORALES:] Right.

[PROSECUTOR:] And then what happened?

[MORALES:] Like I said, 
in an aggressive movement – I mean, within seconds, he entered the vehicle
.  And I recall as I was looking down calling in the plate Officer Horton then yelled, “Weapon, weapon,” and then I heard him saying, “Drop it.”

And when I looked up, all I remember seeing is [appellant] with the club in his right hand, and seemed like just seconds went by.  He was still holding it, and Officer Horton was still telling him to drop it.  Both Officer Horton and I had drawn our weapons.

. . . .

[MORALES:]  In my mind I thought – I did not know what he was grabbing from behind the vehicle or, you know, if there was a gun.

[PROSECUTOR:]  But what you saw in [appellant's] hand was a club?

[MORALES:]  A club.

[PROSECUTOR:]  Did he ever swing it at Officer Horton?

[MORALES:]  Never swung.  He had it in his right hand.

[PROSECUTOR:]  Was it – I guess what I am driving at here, Officer, could you tell from his behavior whether he was going to swing it or just holding it up to show the officer that, "Hey, here it is," that type of thing?  Did you know -- could you tell from what you saw what his intent was?

[MORALES:]  In my opinion, he was probably thinking it was in the back of his mind if he could get away with it.

. . . . 

[MORALES:]  
But to answer your question I don't know what he was thinking
.

[PROSECUTOR:]  But –

[MORALES:]  If he grabbed – a normal person would probably grab it and drop it immediately.

[PROSECUTOR:]  So he was told to drop the club?

[MORALES:]  Correct.

[PROSECUTOR:]  On one or more than one occasion?

[MORALES:]  More than one occasion.

. . . .

[PROSECUTOR:] . . . . And you both had your weapons trained on him?

[MORALES:]  Correct.

[PROSECUTOR:]  Were you prepared to shoot had he made any aggressive move toward any of you?

[MORALES:]  Yes. [Emphasis added.]

At trial, Officer Morales offered similar testimony:

[PROSECUTOR:] . . . .  So can you demonstrate – where is the club?  Can you demonstrate to the jury how [appellant] was holding that club at the time?

[MORALES:]  If you can picture this being the pickup truck, the door swinging open this way, 
he had the club in his hand like this with Officer Horton directly in front of him at an angle
, and I was directly behind him.  

He was ordered to drop the weapon two or three times, and two or three seconds, as I remember, went by with him still having the club like this.  He then dropped the weapon.

[PROSECUTOR:]  
Did you take his position with the club to be menacing in any way?

[MORALES:]  
I did.

[PROSECUTOR:]  Were you in fear for your own safety or the  safety of Officer Horton?

[MORALES:]  I was.  [Emphasis added.]

On cross-examination, defense counsel asked Officer Morales:

[DEFENSE COUNSEL:]  . . . 
[Y]ou say that . . . [appellant] . . . opened . . . one of the doors and reached in and went into the truck and came out with this club in a threatening manner.  Is that your testimony
?

[MORALES:]  
Yes, it is.
 [Emphasis added.]

At the conclusion of the suppression hearing, the trial judge stated that he felt appellant entered the truck and “came out with the instrument in question in a threatening manner according to [the officers’] testimony.”  Thus, it appears from the judge’s statements that he believed the officers had probable cause to arrest appellant for threatening the officers rather than for the offense of unlawful carrying of a weapon.  
The evidence shows that appellant entered the truck after the officers repeatedly told him not to, advanced toward Officer Horton with the stick in his hand, and did not drop the stick immediately when repeatedly ordered to do so.  Although Officer Morales indicated that he was unsure of appellant’s intentions, Officer Horton stated that he thought appellant was “coming after him with the stick.”

The record contains several references to the officers’ demonstrations of the manner in which appellant was holding the stick but no descriptions of the demonstrations.  We cannot determine from the record how appellant was holding the stick when he walked toward Officer Horton.  The trial judge was in the best position of being able to judge the credibility and demeanor of the witnesses, and he found that appellant’s manner was threatening.  Accordingly, we hold that on the facts of this case, the officers had a reasonable belief that appellant committed assault in their presence and, thus, had probable cause to arrest appellant.

Because the officers had probable cause to arrest appellant for assault, their warrantless arrest of appellant was valid.  
See
 Tex. Code Crim. Proc. Ann.
 art. 14.01(b).  Accordingly, the trial court did not abuse its discretion in denying appellant’s motion to suppress.  Appellant’s first issue is overruled.

Miranda
 Warnings

In his third issue, appellant claims that the trial court erred in overruling his motion to suppress and motion for directed verdict because the officers obtained evidence that appellant owned the stick in violation of 
Miranda v. Arizona, 
384 U.S. 436, 86 S. Ct. 1602 (1966), and Texas Code of Criminal Procedure article 38.22.  
Tex. Code Crim. Proc. Ann.
 art. 38.22 (Vernon 1979 & Supp. 2002).  
To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).
  
Further, the trial court must have ruled on the request, objection, or motion, expressly or implicitly, or refused to rule, and the complaining party objected to the refusal.  
Tex. R. App. P.
 33.1(a)(2); 
Taylor v. State
, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996).  Even constitutional error can be waived.  
Wright v. State
, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000), 
cert. denied
, 531 U.S. 1128 (2001).

Here, appellant’s motion to suppress did not allege that appellant’s statements that he owned the stick were obtained in violation of 
Miranda
 and article 38.22.  During trial counsel’s closing arguments at the suppression hearing and trial, he argued that one of the reasons appellant’s arrest was illegal was because the officers did not give appellant 
Miranda
 warnings before appellant told them he owned the stick.  But, he did not object at trial or during the hearing on the motion to suppress when the officers testified that appellant told them the stick was his.  Consequently, we hold that appellant did not preserve this issue for our review.  
See
 
Tex. R. App. P.
 33.1(a)(1).  We overrule appellant’s third issue.

Legal Sufficiency

In his second issue, appellant complains that the trial court erroneously overruled his motion for directed verdict because the State failed to prove at trial that the arrest was valid.  We have already held that the arrest was lawful; we therefore overrule appellant’s second issue.

At oral argument, we granted appellant leave to file a supplemental brief further challenging the legal sufficiency of the evidence.  In his supplemental brief, appellant complains that the evidence was legally insufficient to prove the drugs were in his possession and to tie the stick to the possession offense.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict.  
Cardenas v. State, 
30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939 S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

Appellant has been convicted of possession of a controlled substance.  Possession is defined as actual care, custody, control, or management.  
Tex. Health & Safety Code Ann.
 § 481.002(38) (Vernon Supp. 2003).  Possession may be proved by circumstantial evidence, as long as the evidence affirmatively links the accused to the offense such that it may be inferred that the defendant knew of the contraband's existence and exercised control over it.  
McQuarters v. State
, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref’d).  Evidence that is relevant to establish this “affirmative link” includes but is not limited to:  (1) the defendant's presence when the contraband was discovered; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was the driver of the automobile in which the contraband was found; (14) whether the defendant was found with a large amount of cash; and (15) whether the conduct of the defendant indicated a consciousness of guilt.  
Id
.; 
Pettigrew
, 908 S.W.2d at 571.

In this case, the record is replete with evidence that the truck in which the drugs were found belonged to appellant.  Appellant admitted to the officers that he had driven the truck to the parking lot where the search was conducted.  The drugs were found in an enclosed space, the passenger compartment of appellant's truck, which he admitted having control over.  The bottle containing the drugs was found behind the driver's seat of the single-cab truck, a location that would not have been readily accessible to any passenger of the truck.  No evidence was introduced at trial suggesting that appellant's companion had been in the truck or had any connection with the drugs.  Finally, when the officers approached appellant, before they asked any questions, he told them that he did not have any drugs.  This is some evidence of a guilty conscience on the part of appellant.  Viewing the evidence in a light most favorable to the jury's verdict, we believe it is legally sufficient to support appellant's conviction for possession of a controlled substance.

Appellant’s supplemental brief also raises the issue of the legal sufficiency of the jury’s deadly weapon finding in connection with the possession offense.
(footnote: 3)  A deadly weapon finding is a finding:  (1) that a deadly weapon was used or exhibited during the commission of, or immediate flight from, a felony; and (2) that the defendant used or exhibited that deadly weapon or, as a party to the offense, knew that weapon would be used or exhibited.  
 Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3g(a)(2).  Section 1.07(a)(17) of the penal code defines a deadly weapon as:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury;  or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex. Penal Code Ann.
 § 1.07(a)(17) (Vernon 1994)
.

It is clear that the stick in this case is not a deadly weapon per se under section 1.07(a)(17)(A).  
See Thomas v. State
, 821 S.W.2d 616, 619-20 (Tex. Crim. App. 1991) (noting phrase “deadly weapon per se” means an object that meets definition in 1.07(a)(17)(A)); 
Taylor v. State
, 859 S.W.2d 466, 468 (Tex. App.—Dallas 1993, no pet.) (stating that a sawed-off hardwood axe handle approximately eighteen to twenty-four inches long is not a deadly weapon per se); 
Granger v. State
, 722 S.W.2d 175, 176 (Tex. App.—Beaumont 1986, pet. ref’d) (noting that stick three and a half or four feet long and two inches in diameter is not a deadly weapon per se).  Further, we have already concluded that the stick in this case is not a “club” and, thus, is not “specially designed, made, or adapted” for the purpose of inflicting serious bodily injury or death.  
See
 
Tex. Penal Code Ann.
 § 46.01(1).  Consistent with that conclusion, we also conclude the stick in this case does not fall within the substantially similar definition of deadly weapon found in section 1.07(a)(17)(A).

An object that does not fall within section 1.07(a)(17)(A) can qualify as a deadly weapon through the manner of its use or intended use under subsection (B).  
Hammons v. State
, 856 S.W.2d 797, 800 (Tex. App.—Fort Worth 1993, pet. ref’d).  Under section 1.07(a)(17)(B), an “object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury.”  
McCain v. State
, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).  In deadly weapon cases involving knives, the court of criminal appeals has held that evidence of the appellant’s verbal threats, the distance between the appellant and the victim, and the witnesses’ descriptions of the instrument are all relevant in determining whether the evidence is legally sufficient to support a finding that the appellant intended to use the instrument in a manner capable of causing death or serious bodily injury.  
Brown v. State
, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986).  In addition, while the State is not required to introduce expert testimony to prove that the intended use of an object is capable of causing death or serious bodily injury, it may be “particularly useful in supplementing meager evidence on the issue.”  
Davidson v. State
, 602 S.W.2d 272, 273 (Tex. Crim. App. [Panel Op.] 1980).

In this case, Officer Horton testified at trial that in his opinion as a police officer, the stick and similar objects are capable of causing serious bodily injury or death and the way appellant used the stick on the night the officers arrested him could have caused serious bodily injury or death.  In addition, Officer Morales agreed that the stick is an object that in the manner of its use or intended use is capable of causing death or serious bodily injury.  However, this testimony is not sufficient to establish that the stick is a deadly weapon.  Officer Horton did not testify that appellant intended a use of the stick that is capable of causing death or serious bodily injury.  And, given the remainder of the officers’ testimony in this case, we cannot agree that appellant’s grabbing the stick, exiting the truck in a threatening manner, walking toward Officer Horton with the stick in his hand, and stopping about three feet away from Officer Horton is a use of the stick that is capable of causing death or serious bodily injury.

Because appellant did not use the stick in a manner capable of causing death or serious bodily injury, we must determine whether the evidence is sufficient to prove that appellant intended to use the stick in a manner capable of causing serious bodily injury or death.  There is no such evidence in the record.  Appellant made no verbal threats to the officers.  Although appellant approached Officer Horton while holding the stick, according to Officer Morales’s testimony, he was standing about the length of the bed of a pickup truck away from Officer Horton when he dropped it.  In addition, Officer Morales testified that appellant did not swing the stick at Officer Horton, nor is there any evidence in the record that appellant brandished the stick in any way.  While there is evidence that appellant’s manner of exiting the truck and holding the stick was threatening, there is no evidence that the nature of the threat was to inflict serious bodily injury or death.  At most, the evidence raises a reasonable inference that appellant intended to scare the officers away.  Furthermore, while Officers Horton and Morales testified that they were afraid for their safety, they did not testify that they were afraid appellant would cause them serious bodily injury or death.  

Appellant correctly concedes that the stick is capable of causing death or serious bodily injury.  However, we agree with appellant that even after viewing the evidence in the light most favorable to the verdict, a rational trier of fact could not find that the State proved beyond a reasonable doubt that appellant intended to use the stick in a manner that would cause serious bodily injury or death.
(footnote: 4)  Thus, the evidence is legally insufficient to support the jury’s deadly weapon finding.  We sustain the portion of appellant’s additional issue that complains of the legal sufficiency of the evidence to support the jury’s deadly weapon finding, but overrule the portion contending that the evidence was insufficient to prove he possessed the drugs. 

CONCLUSION

Having sustained the portion of appellant’s subissue challenging the deadly weapon enhancement, we reform the trial court’s judgment to delete the deadly weapon finding and affirm the judgment as reformed.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, JJ; and DAVID L. RICHARDS, J. (Sitting by Assignment).

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 24, 2003

FOOTNOTES
1:
In the second indictment, appellant was charged with possession of a controlled substance with intent to deliver.
 
 The remaining indictments added various enhancement and habitual offender paragraphs.

2:
Because we have decided that the officers did not have probable cause to arrest appellant for unlawful carrying of a weapon, we do not need to address appellant’s fourth issue, concerning a defense that appellant engaged in a “lawful sporting activity.”  
See
 
Tex. Penal Code Ann.
 § 46.15(b)(4) (Vernon Supp. 2002); 
Tex. R. App. P.
 47.1. 

3:
Appellant states in his brief that “there is no affirmative link between the possession of drugs and any alleged prohibited weapon, the dog stick in this case.”  We construe this statement as a challenge to the legal sufficiency of the deadly weapon finding.  
See
 
Tex. R. App. P.
 38.9 (briefing rules to be construed liberally; therefore, substantial compliance with rules is sufficient); 
cf., e.g.
, 
Harris v. State
, 994 S.W.2d 927, 933 (Tex. App.—Waco 1999, pet. ref’d) (stating that “the concept of no ‘affirmative links’ has been used to determine the sufficiency of the evidence for [drug] possession convictions”).

4:
While this result may appear inconsistent with our prior holding that the arrest was lawful, we note that the difference is a result of the less stringent standard of review used to determine probable cause.