Oscar **TURNER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 47190.

Court of Criminal Appeals of Texas.

Feb. 6, 1974.

Rehearing Denied Feb. 20, 1974.

Kery P. FitzGerald, James P. Finstrom, Dallas, (Court appointed), for appellant.

Henry Wade, Dist. Atty., and Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

Appellant was convicted for the offense of robbery; punishment was assessed at life imprisonment.

Three grounds of error are raised on appeal; the sufficiency of the evidence is not challenged.

Appellant initially complains that he was denied his constitutionally guaranteed right to a speedy trial. The offense in question occurred on April 21, 1967; an indictment was returned against the appellant on July 14, 1967. The trial of the cause began on March 27, 1972. It is appellant's contention that because of this delay on the part of the State, employment records which would corroborate appellant's alibi defense were no longer available. Also, he argues that witnesses favorable to this defense had died during this period of some fours and eight months.

This Court has recently had occasion to apply those guidelines and tests suggested in the case of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); the case of George v. State, 498 S.W.2d 202 (Tex.Cr.App.1973) contains a lengthy discussion of at least four factors to be considered; i. e., length of delay, the reason for the delay, the accused's assertion of his right to be speedily tried, and the prejudice to the defendant because of the delay. Certainly, the very length of the delay in this case commands us to examine the remaining factors.

As for the *reason* for the delay, the appellant accuses the State of waiting for the outcome of another cause involving appellant, in which he was tried under the old death penalty statute in Waco. Appellant infers that such tactics amounted to a "purposeful and oppressive delay." See Barker v. Wingo, supra, footnote 23. The State counters that the arrest of appellant for the instant case occurred shourly after his participation in another offense. That second case is found in Turner v. State, 462 S.W.2d 9 (Tex.Cr.App.1969). There appellant was found guilty of murder and the punishment assessed was the death penalty; however, the case was ultimately remanded by the United States Supreme Court. See Turner v. Texas, 403 U.S. 947, 91 S.Ct. 2289, 29 L.Ed.2d 858 (1971). Finally, on August 29, 1972, the Governor of the State of Texas signed an order, commuting the death sentence to one of life imprisonment. The State has further shown that appellant twice escaped from confinement during this period, and contends that during the entire time of the "delay" appellant was lawfully confined on other charges. When the trial actually did begin, appellant then raised a question of the competency of his court-appointed counsel to represent him.

The next factor to be considered, the accused's assertion of his right, weighs heavily against the present appellant. He claims that in 1967 he wrote a letter to the District Attorney in Dallas requesting to "be brought back" (from the Texas Department of Corrections in Huntsville to Dallas). This fact is uncorroborated and no other evidence appears in the record to support it. The first documented request for a trial was in the form of a writ of habeas corpus, filed in May of 1971. At this time, appellant was in prison in Huntsville.[1] On September 13, 1971 appel-

---

1. The State says that this confinement was a result of the appellant pleading guilty to his escapes from confinement previously discussed.

lant was ordered to be bench warranted back to Dallas for trial on the present charge, and the trial began some six months later. Thus, we are actually faced with a delay of approximately ten months from the time the appellant made his first request (of which there is any proof) for a speedy trial.[2]

Appellant contends that he has met the fourth element of the balancing test, also, in that he was prejudiced by the delay. The employment records which appellant states were unavailable at trial time were destroyed in December of 1970, some five months before appellant's first request that his case be brought to trial. The two "possible" alibi witnesses were now both deceased; the record reflects that one died in "late '68 or the early part of '69", the other in October of 1971, about five months before the trial began.

■ We have weighed the various factors in this cause and hereby conclude that reversible error was not committed because of the delay in bringing appellant to trial. It is true that the primary burden is on the prosecution and the courts to insure that defendants are speedily brought to trial. McKinney v. State, 491 S.W.2d 404 (Tex.Cr.App.1973). However, as we have stated many times before, each case must be dealt with on an ad hoc basis, and the facts in the present cause present a somewhat unique situation. While appellant was, in fact, incarcerated for a long period of time before his present trial, he would have been incarcerated regardless of the speed with which the Dallas prosecutors might have reacted. Cf., Bryant v. State, 496 S.W.2d 565 (TexCr.App.1973). While we do not ever condone a delay in bringing an accused to trial, we do recognize the situation which the State faced

here; i. e., the decision to not immediately prosecute a man whose death sentence in another cause was still under review by appellate courts. When the appellant did request a trial, he was brought back to Dallas from Huntsville for trial within a period of time that was not unreasonable. Appellant's claim of prejudice is the loss of "possible" alibi witnesses and is uncorroborated. Finally, the failure to assert his right to a speedy trial dims the claim of harm. This first ground is overruled. See also Moore v. Arizona, 414 U.S. 25, 94 S. Ct. 188, 38 L.Ed.2d 183 (1973).

■ Appellant's two remaining complaints relate to statements made by the prosecutor during argument, which, according to appellant, commented on his failure to testify. One such incident occurred during the hearing on punishment and involved the following colloquy:

"Now, what kind of price are you going to put on a robbery of this nature in this case, and God, I can't imagine a more aggravated set of circumstances. If you can imagine in your own mind a more aggravated set of circumstances, then tell them to me.

"What price are you gong to pay, what price are you going to make Oscar Turner pay for this particular robbery? What yardstick do you use?

"Mr. Sparling [an Assistant District Attorney] told you, well, look at the crime. I ask you to do that. Look at this crime. Look at this Defendant. Do you remember when the Judge read the verdict yesterday? Did you see him wince in his seat? He didn't move a muscle, and I call your attention to his argument and I'd like for you also to take into consideration the Judge's ad-

2. Though this was the first request, it was not the last. Throughout the summer and fall months of 1971, appellant corresponded with the Supreme Court of Texas. seeking to have this case dismissed because of the delay. The Supreme Court responded by stating that

they "were not disposed to direct that a person under the death sentence be tried in another case as long as execution of the sentence in the first case is being held in abeyance."

monition on that particular point. He stood up and he said the State waited for five years to try this case. He didn't say I wasn't, I'm not guilty. Even Mr. Fitzgerald—"

Appellant objected to this argument, the objection was sustained, and the jury was instructed to disregard it; a motion for mistrial was overruled. Appellant contends that the only possible construction the jury could give to such a statement was that this referred to the appellant's failure to testify. We cannot agree. A more logical reading of this portion of the record is that the prosecutor was referring to the appellant's lack of emotion or outcry at the time the verdict was announced.[3] The trial judge nevertheless instructed the jury and we do not believe that the argument, when taken in the context in which it was made, reflects a comment upon the appellant's failure to testify. Yates v. State, 488 S.W.2d 463 (Tex.Cr. App.1972).

The other instance where this same type error allegedly occurred began:

"They [the defense] could just as easily have said Well, we don't deny that my client was there, we just don't believe that he took any money, or we just don't believe that it occurred in Dallas County.

"All of these things they could say, but the problem is we never hear about it until they stand up and argue before you, because there is no evidence, they never call any witnesses to testify to any of these things.

"[Defense Counsel] Your Honor, I'll object to the arguments of the prosecution here because obviously under their testimony there was but one witness to the transactions that occurred out there.

"THE COURT: Sustain the objection. The burden of proof is on the State.

"[Defense Counsel] The basis of my argument, my objection goes to their commenting on the failure of the Defendant to testify in this case, because he is the only possible witness that the defense could have called to refute any testimony given by Mr. Hutcheson on this stand.

"[Prosecutor] I'll clarify that.

"THE COURT: Sustain the objection. The burden of proof is on the State."

The prosecutor did clarify his statements almost immediately thereafter, and stated:

" . . . I did not mean to leave that impression at all, but they have a right to call any witnesses that may clarify any area of this lawsuit. They don't have to be witnesses that were present at the time, but witnesses that could be opinion witnesses or any other type of witnesses to clarify any area of this."

As stated in Yates v. State, supra, for there to be reversible error because of a comment on the failure of the accused to testify, the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to an accused's failure to testify must be a necessary one. "It is not sufficient that the language might be construed as an implied or indirect allusion thereto." Yates, supra, at pg. 466. It is highly questionable whether the statements in the present situation even qualify as an implication or indirect allusion. This ground is overruled.

The judgment is affirmed.

---

3. The record does not aid us in reviewing this contention; it merely contains a form recitation as to the finding of guilty and the announcement thereof.