**David Scott PARKERSON, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 02–95–518–CR.**

Court of Appeals of Texas,
Fort Worth.

April 3, 1997.

Jerry Cobb, Philips, Hopkins, Eames, Shelton, Cobb, Perritt, P.C., Denton, for appellant.

Bruce Issacks, Criminal District Attorney, Yolanda M. Joosten, John Cooper, Assistant District Attorneys, Denton, for appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

In his sole point of error, Appellant David Scott Parkerson complains that the trial court's refusal to dismiss his misdemeanor driving while intoxicated charge violated his right to a speedy trial guaranteed by the United States and Texas Constitutions. We disagree and affirm.

The Sixth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, guarantees the right to a speedy trial. *Klopfer v. North Carolina*, 386 U.S. 213, 223–24, 87 S.Ct. 988, 993–94, 18 L.Ed.2d 1, 8 (1967). The Texas Constitution, article I, section 10, also guarantees the right to a speedy trial, and the test applied under either the state or federal constitution is the same. *Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App. 1985); *Russell v. State*, 598 S.W.2d 238, 248 (Tex.Crim.App.), *cert. denied*, 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980). To determine whether the accused has been denied the right to a speedy trial, the trial court must apply the balancing test first enunciated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116–17 (1972). Although the factors the trial court considers in conducting the *Barker* balancing test are dependent on the circumstances of each case, the Supreme Court has identified the following nonexclusive factors as ones that should be considered in determining whether a defendant has been denied the right to a speedy trial: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the defendant resulting from the delay. *Id.*

### Standard of Review

Appellant and the State both contend that our standard of review is whether the trial court abused its discretion in denying Appellant's motion to dismiss for failure to provide a speedy trial, but we recently held in *Clarke v. State*, 928 S.W.2d 709, 713 (Tex. App.—Fort Worth 1996, pet. filed) (op. on

reh'g) that the standard of review in speedy trial claims was de novo.

The record clearly establishes that the trial judge analyzed Appellant's speedy trial contention by conducting a hearing that allowed both the State and Appellant to argue the merits of their contentions in light of the four factors required by the *Barker* balancing test.

### *Length of Delay*

The first factor to consider is the length of the delay. The length of the delay is measured from the time the defendant is arrested or formally accused. *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Burgett v. State,* 865 S.W.2d 594, 597 (Tex.App.—Fort Worth 1993, pet ref'd). Appellant was arrested twenty-six months before his motion to dismiss was heard. While no specific length of time triggers a speedy trial analysis, the State concedes that a twenty-six month delay on a misdemeanor driving while intoxicated charge is sufficient to trigger the analysis. We agree. *See Harris,* 827 S.W.2d at 956 (noting that some courts presume that delay of eight months or longer is unreasonable).

### *Reason for the Delay*

The second factor to consider is the reason for the delay. *See Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The State bears the burden to establish an excuse for the delay. *Turner v. State,* 545 S.W.2d 133, 137–38 (Tex.Crim.App.1976); *State v. Hernandez,* 830 S.W.2d 631, 634 (Tex.App.—San Antonio 1992, no pet.).

At the hearing on Appellant's motion to dismiss, the State presented testimony from the court coordinator to explain the delay, but there was no evidence that the delay was attributable to Appellant. The only explanation for the delay was the backlog of cases in Denton County. While a neutral reason such as an overcrowded docket weighs less heavily against the State, it should nevertheless be considered because the ultimate responsibility for bringing cases to trial in a timely manner rests with the government. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

Because the State failed to justify the delay, the second *Barker* factor weighed against the State.

### *Assertion of the Right*

The third factor to consider is whether the defendant asserted the right to a speedy trial. *See Burgett,* 865 S.W.2d at 597–98. A defendant's assertion of the right to a speedy trial is entitled to "strong evidentiary weight." *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. A defendant's failure to assert the right to a speedy trial makes it difficult to prove that a speedy trial was denied and diminishes the importance of the State's inability to excuse the delay. *See Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117–18; *see also Clarke,* 928 S.W.2d at 714; *Orosco v. State,* 827 S.W.2d 575, 577 (Tex.App.—Fort Worth, pet. ref'd), *cert. denied,* 506 U.S. 960, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992).

Appellant never requested a speedy trial. Appellant was arrested on June 5, 1993. Although Appellant filed twelve pretrial motions in May 1994 and requested a pretrial hearing on the motions, no hearing was held and Appellant never obtained a ruling from the court on his pretrial motions. Appellant's next action in this case was in June 1995 when he filed a motion to dismiss for failure to provide a speedy trial. Appellant's request for a dismissal instead of a speedy trial weakens his claim because it shows a desire to have no trial instead of a speedy trial. *See Harris,* 827 S.W.2d at 957; *Orosco,* 827 S.W.2d at 577. Therefore, the third *Barker* factor weighed against Appellant.

### *Prejudice Caused by the Delay*

The fourth factor that *Barker* requires us to consider is whether the delay of trial was prejudicial to Appellant. That factor is to be considered in light of the interests that the right to a speedy trial was designed to protect. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 116. The right to a speedy trial was designed to pre-

vent: (1) oppressive pretrial incarceration; (2) excessive anxiety over the pending charges; and (3) impairment of an accused's ability to present a defense. *Id.* The defendant bears the burden of making an initial showing that the delay was prejudicial. *Phillips v. State,* 650 S.W.2d 396, 401 (Tex. Crim.App. [Panel Op] 1983); *Ramirez v. State,* 897 S.W.2d 428, 433 (Tex.App.—El Paso 1995, no pet.). Once the defendant makes some showing that the delay was prejudicial, the burden shifts to the State to refute that prejudice. *Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex.Crim.App.1973); *State v. Perkins,* 911 S.W.2d 548, 554 (Tex. App.—Fort Worth 1995, no pet.).

Appellant was not incarcerated during the period his trial was pending, so we are left to consider the anxiety the delay caused and the extent to which his defense was impaired by the delay. The only evidence in the record of Appellant's anxiety over the pending charges is the following testimony given during Appellant's cross-examination at the hearing on his motion to dismiss:

Q. Did you get all concerned after maybe, say, a year after the event passed and this case wasn't resolved?

A. It's been on my mind every day since the occurrence. So, yes, I've been concerned.

Q. So after, say, a year because you assumed it would only take a year to get it resolved, did you maybe ask Mr. Cobb to speed it up or say, hey, what's the problem?

A. No. This has been such a financial burden and a stressful burden on myself and my family that I just thought I—we're going to let due process take its toll. And then when it finally came to court, I didn't know what the state was doing in regards to my case. When we got the court date about a couple of months ago it was scheduled for December, two and a half years after the fact, then I got more concerned, because here it is staring me straight in

the face. I can't find my witnesses and just the amount of time that's passed by is overwhelming.

While this testimony constitutes some evidence of anxiety over the pending charges,[1] the trial court could have reasonably concluded that Appellant really desired no trial at all and suffered anxiety as a consequence of realizing that there would be a trial.

■ Appellant's primary claim of prejudice is based on the unavailability of two witnesses at the time of trial. When the nonavailability of witnesses is the basis of a claim of prejudice, an appellant must show: (1) the witness was unavailable at the time of trial; (2) the testimony that would have been offered was relevant and material to the defense; and (3) due diligence was exercised in an attempt to locate the witnesses for trial. *Swisher v. State,* 544 S.W.2d 379, 382 (Tex. Crim.App.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *McCarty v. State,* 498 S.W.2d 212, 218 (Tex.Crim. App.1973).

Appellant testified that he was unable to locate Shea Nugent and Mark Hickey due to the delay. Appellant contends that the two witnesses were crucial to his defense because they would have given opinion testimony as to whether he had lost normal use of his mental or physical faculties shortly before his arrest. Appellant testified that Hickey was a manager at the hotel where Appellant and Nugent attended a wedding together on the evening of June 5, 1993. Approximately thirty minutes before Appellant was pulled over by the police, Appellant had a conversation with Hickey about a job opportunity at the hotel. Later, Appellant and Nugent went from the hotel to Nugent's house. Nugent stayed at her house while Appellant drove away in his car. He was stopped by police approximately ten minutes later. Appellant's testimony about Hickey and Nugent satisfied his burden to show that Hickey and Nugent were unavailable and could have offered tes-

---

1. The *Barker* Court noted that even defendants who are not incarcerated may experience excessive anxiety as a result of a delay because they often live under a cloud of anxiety, are subject to public scorn, and might be deprived of employment. *Barker,* 407 U.S. at 532 & n. 33, 92 S.Ct. at 2193 & n. 33, 33 L.Ed.2d at 118 & n. 33. Although Appellant testified that he thought about the charges every day, there is no evidence that he was subject to public scorn or was deprived of employment.

timony relevant and material to his defense. *See Phillips*, 650 S.W.2d at 402–03 (stating that *Barker* only requires showing that missing witness was believed to know about the facts surrounding the offense, not that witness would definitely testify favorably for defense).

The record does not clearly establish whether Appellant exercised due diligence in trying to locate the two witnesses for trial.[2] Appellant testified that at the time of his arrest he worked with Nugent at a local hotel. The record does not indicate whether Appellant ever discussed with Nugent that she would testify at his trial. The last conversation Appellant had with Nugent was approximately eighteen months before the hearing on his motion to dismiss. After that conversation, Appellant did not attempt to contact Nugent until a couple of days before the hearing on his motion to dismiss.[3] Appellant's efforts were limited to calling old phone numbers, attempting to obtain a recent phone number through directory assistance, and contacting her old employer to determine if they knew where she could be contacted.[4]

Appellant contacted Hickey within a week after his arrest and Hickey agreed that he would be available to testify for at least a year. When asked whether he had tried to stay in contact with Hickey between their June 1993 conversation and the hearing on his motion to dismiss, Appellant testified that he tried to contact Hickey approximately two months before the hearing and was informed

that Hickey was no longer employed at the hotel.[5] Clearly, Appellant waited at least two years before trying to call Hickey to testify, despite knowing that Hickey expected to be "available" for one year.[6] We conclude that Appellant failed to exercise due diligence in attempting to locate and secure Nugent and Hickey as witnesses for his trial, and therefore failed to carry his burden to establish prejudice.

### Conclusion

Our review of the trial court's application of the four *Barker* factors to this record, shows that the first two factors weigh against the State but the last two factors weigh more heavily against Appellant. The trial court did not err by denying Appellant's motion to dismiss the charged offense for lack of a speedy trial. Appellant's sole point of error is overruled and the judgment of the trial court is affirmed.

LIVINGSTON, J., filed a concurring opinion.

LIVINGSTON, Justice, concurring.

I join in the result of the opinion and write separately only to respectfully disagree with the court's application of the de novo review of a trial court's speedy trial analysis as adopted by this court in *Clarke v. State*, 928 S.W.2d 709, 713 (Tex.App.—Fort Worth 1996, pet. filed) (op. on reh'g). I believe an appellate court should apply an abuse of discretion standard of review. *Clarke*, 928

2. Appellant's testimony was the only evidence of diligence presented at the hearing on the motion to dismiss. Appellant, however, admitted that his "perception of time is not the greatest": thus, exactly when Appellant attempted to contact his missing witnesses in not easily discernable from the record.

3. Appellant's motion to dismiss for failure to afford a speedy trial was filed June 28, 1995 and the hearing was held on September 1, 1995. In his motion, Appellant claimed that Nugent was unavailable because she had moved and he was unable to locate her. At the hearing, however, Appellant testified that he last spoke to Nugent in the summer of 1993 and since then his efforts to locate her were limited to the couple of days before the hearing.

4. When Appellant was asked whether he had thought about hiring a private investigator to

locate Nugent and Hickey, he contended that he had not because he had exhausted all his resources. Appellant admitted, however, that he never sought an estimate on how much it would cost to hire a private investigator to locate these witnesses.

5. Given the rough time estimates provided by Appellant at the hearing, it again appears that Appellant's efforts to locate this witness were limited to the time period after his motion to dismiss had been filed.

6. Appellant conceded that, given his familiarity with the hospitality industry, he was naive to anticipate that Hickey would still be employed at the same hotel after the initial one-year estimate he had been given by Hickey.

S.W.2d at 723 (Livingston, J., concurring); *State v. Perkins,* 911 S.W.2d 548, 551 (Tex. App.—Fort Worth 1995, no pet.) (applying abuse of discretion standard), *overruled by implication in Clarke,* 928 S.W.2d at 713.