NUMBER 13-05-00083-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


THE STATE OF TEXAS, Appellant,


v.


RODOLFO DELGADO, Appellee.

 


On appeal from the County Court at Law No. 1

of Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Benavides


Memorandum Opinion by Chief Justice Valdez


 

 This is an appeal by the State from the trial court's dismissal of its case against
appellee, Rodolfo Delgado, for driving while intoxicated ("DWI"), based on a violation of his
right to a speedy trial. In a single issue, the State contends that the trial court erred in its
determination that appellee's right to speedy trial had been violated. We affirm. 

I. BACKGROUND

 The record before us consists of numerous motions presented to the trial court and
transcripts of various hearings held between September 8, 2003 and January 24, 2005. 
As the sequence of events is important, the following time-line is necessary. 


September 21,
2002
Appellee was arrested for driving while intoxicated.
January 21, 2003
State files information formally charging appellee with
misdemeanor driving while intoxicated. 

May 30, 2003
Appellee files a waiver of arraignment, in which appellee enters
a plea of not guilty. 

June 4, 2003
Order granting waiver of arraignment filed with notation of
"status hearing" set for September 8, 2003. 
September 8,
2003
Trial court conducts its first "status hearing" and, at the request
of defense counsel, the case is reset for November 12, 2003,
approximately 60 days. 
October 27, 2003
Appellee files (1) motion to suppress statements, (2) motion to
list State's witnesses, (3) motion in limine, and (4) motion for
discovery and inspection of evidence.

Criminal docket sheet indicates that the November 12, 2003,
hearing was reset "by agreement of the parties" "to allow State
witnesses to become available for motions filed or to be filed to
proceed to a hearing." Hearing reset for May 7, 2004. 
April 29, 2004
Appellee files (1) motion to quash; (2) motion for return of
illegally seized items; (3) motion to disqualify Hidalgo County
District Attorney Rene Guerra or in the alternative to dismiss; (4)
motion to produce exculpatory and mitigating evidence; (5)
accused motion for discovery in DWI prosecution; (6) a DWI
motion to suppress; and a (7) motion for deposition of arresting
officers in DWI prosecution. 
May 5, 2004
Appellee files motion to set aside complaint for failure to afford
speedy trial. 

May 7, 2004
Trial court conducts hearing on various pretrial motions filed by
appellee. The court decides first to hear appellee's motion to
disqualify Hidalgo County District Attorney Rene Guerra. After
hearing arguments from both sides, the trial court grants
appellee's motion to disqualify, but does not appoint a
prosecutor pro tem. All other pending motions were reset for a
status hearing set for June 8, 2004. 
June 4, 2004
State files a motion for stay pending writ of mandamus with the
trial court. 
June 8, 2004
Trial court holds its second "status hearing" and denies State's
motion for stay pending writ of mandamus, but resets the case
for August 24, 2004, because it felt it was "appropriate for the
court of appeals to review this mandamus." Defense counsel
repeatedly urges the trial court to appoint a prosecutor pro tem
so that appellee's motion for speedy trial could be heard. No
special prosecutor is appointed. 
June 24, 2004
State seeks mandamus relief from this Court. 

August 19, 2004
Mandamus relief denied.

August 24, 2004
Trial court holds its third "status hearing" where the State
informs the court that it intends to have the disqualification
reviewed by the Court of Criminal Appeals. Defense counsel
again urges the trial court to appoint a prosecutor pro tem "so
[appellee] can have his day in court." The trial court agrees, and
resets the case for September 29, 2004. 
August 26, 2004
Trial court appoints a prosecutor pro tem. 
September 19,
2004
State seeks mandamus relief from the Texas Court of Criminal
Appeals. 

September 27,
2004
Court of Criminal Appeals grants State's request to stay the trial
proceedings. 
December 15,
2004
Court of Criminal Appeals grants petition for mandamus relief. 

December 16,
2004
Trial court withdraws its disqualification of district attorney's
office and sets a hearing for January 24, 2005. 
January 24, 2005
Trial court hears appellee's motion to set aside complaint for
failure to afford speedy trial. Appellee is called to testify in
support of his motion. After hearing appellee's testimony, and
arguments made by both the State and defense, the trial court
grants appellee's motion for speedy trial and dismisses the
complaint against appellee.


II. APPLICABLE LAW


A. Standard of Review

 When reviewing a trial court's decision on a speedy trial claim, an appellate court
applies a bifurcated standard of review. State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim.
App. 1999); State v. Jones, 168 S.W.3d 339, 345 (Tex. App.-Dallas 2005, pet. ref'd). We
review legal issues de novo but give deference to a trial court's resolution of factual issues. 
Kelly v. State, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); Munoz, 991 S.W.2d at 821;
Jones, 168 S.W.3d at 345. We review a speedy trial claim in light of the arguments,
information, and evidence that was available to the trial court at the time it ruled. Shaw v.
State, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); Dragoo v. State, 96 S.W.3d 308, 313
(Tex. Crim. App. 2003); Jones, 168 S.W.3d at 345. Under this standard of review,
deference must be given not only to a trial court's resolution of disputed facts, but also to
the drawing of reasonable inferences from the facts. Kelly, 163 S.W.3d at 726. Deference
must be given to a trial court's finding, even when those findings do not turn on the
assessment of credibility and demeanor. Kelly, 163 S.W.3d at 726. 

 We must uphold the trial court's ruling if it is supported by the record and is correct
under the applicable law. Shaw, 117 S.W.3d at 889; Munoz, 991 S.W.2d at 821; Jones,
168 S.W.3d at 345. If a violation of the defendant's right to a speedy trial is established,
the only possible remedy is dismissal of the prosecution. Strunk v. United States, 412 U.S.
434, 440 (1973); Dragoo, 96 S.W.3d at 313; Jones, 168 S.W.3d at 346. 

B. Right to Speedy Trial

 The Sixth Amendment to the United States Constitution provides, in relevant part,
that "in all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." 
U.S. Const. amend. VI; Barker v. Wingo, 407 U.S. 514, 515 (1972). This right was made
applicable to the states by the Due Process Clause of the Fourteenth Amendment. U.S.
Const. amend. XIV; see Klopfer v. North Carolina, 386 U.S. 213, 223 (1967). 

 The Texas Constitution likewise provides that "in all criminal prosecutions the
accused shall have a speedy . . . trial." Tex. Const. art. 1, § 10. The Texas Court of
Criminal Appeals has traditionally analyzed state constitutional claims of the denial of a
speedy trial under the factors established in Barker. See Zamorano v. State, 84 S.W.3d
643, 648 (Tex. Crim. App. 2002). 

 The primary burden is on the prosecution and the courts to insure that defendants
are speedily brought to trial. See Chapman v. Evans, 744 S.W.2d 133, 136-37 (Tex. Crim.
App. 1988)(orig. proceeding) (citing Turner v. State, 504 S.W.2d 843, 845 (Tex. Crim. App.
1974); McKinney v. State, 491 S.W.2d 404, 407 (Tex. Crim. App. 1973)). In determining
whether one has been denied his federal or state right to a speedy trial, a court must use
a balancing test to weigh the conduct of both the State and the defendant. See Shaw, 117
S.W.3d at 888 (citing Barker, 407 U.S. at 530). The relevant factors to be weighed include,
but are not necessarily limited to (1) the length of the delay, (2) the reasons for the delay,
(3) the defendant's assertion of his speedy trial right, and (4) any prejudice to the
defendant resulting from the delay. Id. at 888-89. We turn now to our de novo review and
independent weighing and balancing of the relevant Barker factors. 

III. ANALYSIS

A. Length of Delay

 The length of delay is a triggering mechanism for analysis of the other three Barker
factors. Barker, 407 U.S. at 530-33; Munoz, 991 S.W.2d at 821. Unless the delay is
presumptively prejudicial, we need not inquire into the other Barker factors. Id. Generally,
a delay of eight months or longer is considered "presumptively prejudicial" and triggers
speedy trial analysis. State v. Rangel, 980 S.W.2d 840, 843 (Tex. App.-San Antonio
1998, no pet.). However, the length of delay that will invoke such an inquiry depends upon
the circumstances of each case. Zamorano, 84 S.W.3d at 648-49. 

 The Supreme Court has noted "the delay that can be tolerated for an ordinary street
crime is considerably less than for a serious, complex conspiracy charge." Barker, 407 U.S.
at 531; Zamorano, 84 S.W.3d at 649. If the accused demonstrates the time from
accusation to trial "has crossed the threshold dividing 'ordinary' from 'presumptively
prejudicial' delay, a court must then consider the extent to which that delay stretches
beyond the bare minimum needed to trigger judicial examination of the claim." Zamorano,
84 S.W.3d at 649. Therefore, a "speedy trial analysis depends first upon whether the delay
is more than 'ordinary'; if so, the longer the delay beyond which is ordinary, the more
prejudicial that delay is to the defendant." Id. The length of delay for speedy trial purposes
is measured from the time the defendant is arrested or formally accused. United States
v. Marion, 404 U.S. 307, 313 (1971).

 Appellee was arrested on September 21, 2002. On May 30, 2003, appellee was
arraigned, at which time, he filed a waiver of arraignment. Thus, a period of approximately
eight months occurred from the time appellee was arrested to the time that he entered a
plea of not guilty. This period of time alone is sufficient to trigger a speedy trial inquiry. 
The State concedes, however, that from the time that appellee was arrested, to the time
that appellee first demanded a speedy trial (May 5, 2004), an interval of approximately
nineteen and a half months, is presumptively prejudicial. Indeed, the record indicates that
appellee's motion for speedy trial was not heard until January 24, 2005, a period of two
years and four months from the time appellee was arrested. Because the State concedes,
and we agree, that the delay is presumptively prejudicial, we will consider the other three
speedy trial factors. However, because this delay stretched far beyond the minimum
needed to trigger a speedy trial inquiry, we will weigh this factor heavily in favor of finding
a violation of the speedy trial right. Shaw, 117 S.W.3d at 889; Dragoo, 96 S.W.3d at 314;
Zamorano, 84 S.W.3d at 649.

B. Reasons for delay. 

 The State bears the burden of justifying the delay. Rangel, 980 S.W.2d at 843. 
Courts assign different weights to different reasons for a delay. Dragoo, 96 S.W.3d at 314. 
A deliberate attempt to delay a trial is weighed heavily against the State, while more neutral
reasons, such as negligence or overcrowded dockets, are weighed less heavily. 
Zamorano, 84 S.W.3d at 649. When the record is silent regarding the reasons for the
delay, a court may presume neither a deliberate attempt on the part of the State to
prejudice the defense, nor a valid reason for the delay. Dragoo, 96 S.W.3d at 314. Finally,
a valid reason justifies appropriate delay. Id. In this case, there are four segments of time
that must be accounted for. 

September 21, 2002 to June 4, 2003 

 First, a period of eight months occurred between the date of appellee's arrest,
September 21, 2002, and the date of his arraignment, May 30, 2003. The State does not
provide, nor does the record indicate, a justification for the delay in having appellee
formally arraigned. We hold that the eight month delay between the date of appellee's
arrest and the date of his arraignment weighs against the State.

June 4, 2003 to November 12, 2003 

 Second, on June 4, 2003, the trial court filed its order granting appellee's waiver of
arraignment with a notation indicating that a "status hearing" was to be held on September,
8, 2003. At the September 8th hearing, the prosecutor suggested that two "pre-trial dates"
be given by the trial court; one in "the fall of [2003]" and one in the "first part of 2004." The
State argued that a pre-trial date of "fall of 2003," and an alternate pre-trial date of early
2004 are necessary due to the possibility that appellee's counsel might exercise his
legislative privilege. The prosecutor also noted that a pre-trial diversion was also being
contemplated by defense counsel. Appellee's counsel acknowledged that a pretrial
diversion was a possibility, and asked the court for "60 days to pursue that and come back
on status that may be dispositive in this case." The trial court agreed and reset the case
for a November 12, 2003 "status hearing." The State argues that the 60 day delay was the
result of "good faith plea negotiations" and therefore should not be weighted against the
State. We agree. Because the 60 day delay was awarded at appellee's request, we
cannot hold the State accountable for this 60 day period. 

November 12, 2003 to May 7, 2004.

 Third, the record indicates that the November 12, 2003 hearing was reset to May
7, 2004, an interval of approximately six months. The State concedes to requesting the
reset but states that because the handwritten criminal docket sheet indicates that the reset
was agreed to by "the parties," this period of delay should not be held against it. Appellate
courts are skeptical of docket sheet notations. See Garcia v. State, 45 S.W.3d 733, 736
(Tex. App-Corpus Christi 2001, no pet.); State v. Shaw, 4 S.W.3d 875, 878 (Tex.
App.-Dallas 1999, no pet.) (holding a docket sheet entry does not become part of the
record because it is inherently unreliable); Rodriguez v. State, 834 S.W.2d 592, 595 (Tex.
App.-Houston [1st Dist.] 1992), pet. granted in part & ref'd in part; remanded in part on
other grounds, 844 S.W.2d 744 (Tex. Crim. App. 1992) (holding docket sheets are not
evidence upon which the parties may rely on appeal). The record is entirely silent as to
what exactly happened on November 12. Aside from the handwritten notation on the
docket sheet, there is no evidence of any type of written agreement by the parties, nor any
type of request to reset, either oral or written, by the State. We may not presume an
agreement exists when the record does not reflect that it ever did. See Rodriguez, 834
S.W.2d at 595 (court refused to presume that the trial court ever refused to accept a plea
bargain.); Bell v. State, 734 S.W.2d 83, 83 (Tex. App.-Austin 1987, no pet.) (court refused
to presume from docket sheet notation indicating that a complaint was filed).

 In the alternative, the State attempts to justify this period with the following: "a valid
reason, such as a missing witness, will justify a delay and weigh in the State's favor."
Nothing in the record, aside from the docket notation, however, indicates that the State had
trouble locating or identifying witnesses, nor did the State attempt to make this argument
to the trial court. Without more than a handwritten notation of an agreement to reset, and
because nothing in the record indicates that the State had trouble locating its witnesses,
we hold that the State has failed to meet its burden in justifying this period of delay. We
hold this sixth month period against the State. 

May 7, 2004 to December 15, 2004

 Fourth, on May 7, 2004, a full year and seven months after appellee was arrested,
a hearing was held by the trial court in order to address various pre-trial motions filed by
appellee. The first motion heard by the trial court was appellee's motion to disqualify
Hidalgo County District Attorney Rene Guerra from prosecuting the case against appellee. 
After hearing arguments from both sides, the trial judge granted the motion and disqualified
the Hidalgo County District Attorney's Office from prosecuting the case. The trial court
further held that it would appoint a special prosecutor and, in the interim, all other pending
motions filed by appellee would be "left for whomever takes over the prosecution of this
matter." The trial court then reset the matter for June 8, 2004, giving the State 32 days to
have its decision reviewed by the court of appeals. (1) 

 On June 4th, the State filed a motion for stay pending writ of mandamus. The State
then sought an order on its motion to stay at the June 8th status hearing. At the hearing,
the trial court voiced its concern with the State's inability to get its decision to disqualify the
district attorney's office reviewed by the court of appeals within the thirty days it had
provided. The trial court "genuinely expected that if there was to be a writ of mandamus
it would have been filed . . . by now;" and it felt the thirty days it had provided was "a very
reasonable timetable to get this turned around and reviewed." Although the trial court
denied the State's motion, it did reset for an additional status hearing to be held on August
24, 2004, because it felt it was "appropriate for the court of appeals to review the
mandamus." The State offered no explanation why after thirty-two days no mandamus had
yet been filed. The State eventually filed its writ of mandamus with this Court on June 24,
2004, a full forty-eight days after the motion to disqualify was granted. Mandamus relief
was subsequently denied on August 19, 2004. 

 On August 24, 2004, the trial court held its second status hearing since disqualifying
the district attorney's office from prosecuting this case. At the hearing, the State informed
the trial court that it intended to have the disqualification issue reviewed by the Texas Court
of Criminal Appeals. On September 19, 2004, the State sought mandamus relief from the
Texas Court of Criminal Appeals and was granted relief on December 15, 2004. The
State's challenge to the trial court's ruling granting appellee's motion to disqualify
accounted for over seven months of delay. The State argues that this seven month period
was occasioned by appellee's own efforts and cannot be attributed to the State. 

 We first note that it took the State forty-eight days to file its initial mandamus. We
also note that it took the State an additional thirty days to seek review from the Court of
Criminal Appeals after this Court denied mandamus relief. While periods of appellate
review cannot be directly attributed to the State, see Emery v. State, 215 S.W.2d 702, 709
(Tex. Crim. App. 1994); Easley v. State, 564 S.W.2d 742, 745 (Tex. Crim. App. 1978), we
recognize that the trial court repeatedly expressed its frustration with the State's pace in
getting its ruling to disqualify the district attorney's office reviewed. Based on this factor
alone, we conclude that the trial court could have reasonably inferred that part of the seven
month delay was due to lack of diligence on the part of the State. See Kelly, 163 S.W.3d
at 726.

 Overall, a period of two years and two months occurred between the time appellee
was arrested (September 21, 2002) and the time the State was granted mandamus relief
from the Court of Criminal Appeals (December 15, 2004). Because the State offers no
justification for the initial eight month delay, we attribute this period of delay to the State. 
Moreover, because the record is devoid of any indication that the State was having trouble
locating its witnesses, we also attribute an additional six months of delay to the State. 
Finally, we note the trial court's displeasure in the State's pace in getting its ruling to
disqualify the district attorney's office from prosecuting this case reviewed. Accordingly,
based on the evidence presented, the trial court's actual and implied findings, and the
relevant law, we find the State did not carry its burden to prove a valid reason for a total
of fifteen months, and, based on the facts as provided, caused some delay in getting the
trial court's ruling to disqualify reviewed. While this finding weighs against the State, it
does so less heavily than a deliberate attempt to delay. See Munoz, 991 S.W.2d 822
(citing Barker, 407 U.S. at 531). 

C. Assertion of Speedy Trial Right

 A defendant's assertion of his speedy trial right is entitled to strong evidentiary
weight in determining whether the defendant was being deprived of the right. Barker, 407
U.S. at 531-32. A defendant has some responsibility to assert his right to a speedy trial,
and his failure to do so strongly indicates that he did not really want a speedy trial. See
Harris v. State, 827 S.W.2d 949, 957 (Tex. Crim. App.1992). The manner in which a
defendant raises a speedy-trial complaint is also significant. Although a motion to dismiss
notifies the State and the court of the speedy-trial claim, a defendant's motivation in asking
for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate
the strength of his claim. Phillips v. State, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983). 
 Here, nineteen-and-a-half months after his arrest, appellee filed a motion to set
aside the complaint for failure to afford his constitutional right to a speedy trial. The State
argues that appellant, by waiting nineteen-and-a-half months before filing his motion to
dismiss, did not timely assert the right. We disagree. 

 The record indicates that appellee filed his motion for speedy trial on May 5, 2004,
two days prior to the scheduled May 7th "status hearing." At the hearing, the trial judge
decided to hear appellee's motion to disqualify the Hidalgo County District Attorney before
proceeding with another motion. After granting appellee's motion to disqualify, the court
held that it would appoint a special prosecutor and, in the interim, all other pending motions
filed by appellee would be "left for whomever takes over the prosecution of this matter." 
As noted above, it took the State over seven months to get this ruling reviewed by this
Court and the Texas court of criminal appeals. Within this time period, the record indicates
that appellee repeatedly urged the trial court to appoint a special prosecutor so that
appellee's motion for speedy trial can be heard. (2) This is not a case where appellee sat idly
by and never asked for a hearing. Cf. Cook v. State, 741 S.W.2d 928, 940 (Tex. Crim.
App. 1987) (assertion-of-right factor weighs against appellant where "there is no evidence
beyond the two motions for speedy trial filed with the district clerk that appellant asserted
his right to a speedy trial by requesting hearings to present evidence on the matter."),
vacated and remanded on other grounds, 488 U.S. 807 (1988)). A defendant has no duty
to bring himself to trial, and the primary burden rests upon the courts and the prosecution
to insure that cases are brought to trial. Barker, 407 U.S. at 527. Appellee repeatedly
urged the court to appoint a prosecutor pro tem so that his motion for speedy trial could be
heard. These repeated assertions weigh in appellee's favor. See Zamorano, 84 S.W.3d
at 652.

 The State further argues that by filing a motion to dismiss, appellant showed that
he was not truly interested in a speedy trial. That appellee's speedy trial claim was framed
as a motion to dismiss "potentially weakens [his] case, as 'a [request for a] dismissal
instead of a [request for a] speedy trial weakens [a speedy trial] claim because it shows a
desire to have no trial instead of a speedy trial.'" Id. at 651 n. 40 (quoting Parkerson v.
State, 942 S.W.2d 789, 791 (Tex. App.-Fort Worth 1997, no pet.)). "But 'each case must
turn on its own facts, and the particular relief a defendant seeks is but one fact to
consider.'" Id. (quoting Phillips, 650 S.W.2d at 401). The record indicates that the trial
court did held its first status hearing on September 8, 2003, approximately one year after
appellee was arrested. Its next status hearing, scheduled for November 11, 2003, was
reset, at the State's request, for May 7, 2004. Thus, a second status hearing did not occur
for over 594 days after appellee was arrested. Counsel may legitimately feel that a long
delay has caused a client so much prejudice, "even if the State is belatedly ready to move
promptly," that the delay warranted dismissal. Phillips, 650 S.W.2d at 401. Given that 592
days had passed when appellee filed his motion for speedy trial, coupled with the fact that
this is a non-complex misdemeanor DWI case, the fact that appellee couched his motion
for speedy trial in terms of a dismissal is understandable. 

 In sum, because appellee repeatedly urged the trial court to hear his speedy trial
claim, and because the particular circumstances of this case justify appellee's request for
a dismissal, we find this factor weighs in appellee's favor. 

D. Prejudice Resulting From Delay 

 Prejudice, the fourth factor, is to be considered in light of the interests that the right
to a speedy trial was designed to protect. Barker, 407 U.S. at 532. These interests include
(1) prevention of extended pre-trial incarceration, (2) minimization of anxiety over pending
charges, and (3) the prevention of actual prejudice to the defendant's ability to present a
defense. Id. "Of these forms of prejudice, 'the most serious is the last, because the
inability of a defendant adequately to prepare his case skews the fairness of the entire
system.'" Dragoo, 96 S.W.3d at 315 (quoting Barker, 407 U.S. at 532). 

 With regard to the first and second interests, we hold appellee was not prejudiced. 
At the January 24th hearing on his motion to dismiss, appellee was the only witness. Our
review of the hearing indicates that appellee never explicitly commented on any form of
anxiety he may have suffered. At most, appellee's testimony indicates no more anxiety
and concern beyond what would ordinarily result from being arrested and charged with a
serious offense. See Shaw, 117 S.W.3d at 890. 

 However, with regard to the third interest, appellee also testified that just prior to his
arrest, he was at his father's house; and both his father and his father's housekeeper, Mari,
were to testify regarding appellee's "condition" when he was arrested. Because appellee's
father now suffers from Alzheimer's and because his father's housekeeper has moved to
Houston, Texas, appellee claims that these witnesses are unavailable. (3)

 The unavailability of a witness implicates the "most serious" "sub-factor" in the
prejudice analysis, "because the inability of a defendant to adequately prepare his case
skews the fairness of the entire system." Dragoo, 96 S.W.3d at 315; see State v.
Guerrero, 110 S.W.3d 155, 162-63 (Tex. App.-San Antonio 2003, no pet.). On appeal, the
State argues that these witnesses are only two of a large group of people that could testify
regarding appellee's condition just prior to his arrest. However, the State did not present
any evidence that any of these other people had knowledge of appellee's condition nor did
they present any evidence that these other people were available to testify. We conduct
our review "in light of the arguments, information, and evidence that was available to the
trial court at the time it ruled." Shaw, 117 S.W.3d at 889. Moreover, "excessive delay
presumptively compromises the reliability of a trial in ways that neither party can prove or,
for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth
Amendment claim without regard to the other Barker criteria, . . . it is part of the mix of
relevant facts, and its importance increases with the length of delay." Dogett, 505 U.S. at
655-56.

 "When the defendant makes a prima facie showing of prejudice, the State carries
the burden of proving that the defendant 'suffered no serious prejudice beyond that which
ensued from the ordinary and inevitable delay.'" Guerrero, 110 S.W.3d at162 (quoting Ex
parte McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)). The State has failed to do
so. We recognize that at the speedy trial hearing, the State neither offered any witnesses
or presented any evidence to rebut appellee's claim of prejudice. Without such evidence
it is difficult to give credence to the State's arguments on appeal. The record of the speedy
trial hearing indicated that the trial court felt that appellee had been prejudiced as the result
of losing these two witnesses. We will not second guess a trial court's finding of prejudice
where the State has wholly failed to present any evidence to the contrary. See Kelly, 163
S.W.3d at 726 (holding that deference must be given not only to a trial court's resolution
of disputed facts, but also to the drawing of reasonable inferences from those facts.). 
Moreover, a trial judge's personal knowledge of the parties and the sequence of events do
in fact place him in a better position to draw inferences than appellate courts without such
familiarity. Id. at 726-27. Based on the record, and upon appellee's testimony, we find that
the trial court could have inferred prejudice to appellee's ability to present a defense as a
result of losing witnesses who could account for his condition prior to being arrested. 

 Because appellee made a prima facie case of prejudice, and the State failed to
carry its burden to prove that he did not suffer prejudice beyond that inherent in the
"ordinary and inevitable delay," we hold the prejudice factor weighs in favor of finding that
appellee's right to a speedy trial was violated. 

E. Balancing the Barker Factors 

 All four of the Barker factors weigh in appellee's favor: (1) the length of delay, more
than two years, is presumptively prejudicial and unreasonable and therefore supports
appellee's position; (2) the State did not carry its burden in justifying fifteen months of
delay, and was at least negligent in delaying the review of the trial court's ruling to
disqualify the district attorney's office for seventy-eight days; (3) appellee repeatedly urged
the trial court to hear his motion for speedy trial; (4) and the unavailability of appellee's
father and the housekeeper, establish that the delay caused some prejudice, which the
State failed to rebut. We therefore overrule the State's only issue on appeal and affirm the
trial court's judgment.



 

 ROGELIO VALDEZ

 Chief Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 2nd day of August, 2007.

1. Specifically, the trial court stated the following: "Let me suggest a brief reset for a status. In other
words, put the ball on the D.A.'s office. Of course, they can either, of course, seek to have this decision
reviewed or follow the order of the Court and appoint somebody else to handle this, but I do want information
or a decision of what is going to be done with it." 
2. At the June 8th "status hearing," defense counsel made the following arguments to the trial court: 


 They had presented some other case to the grand jury that was no billed. They
lacked a material witness that prevented us from going forward on motions to
suppress and other motions, and now they are coming here at the eleventh hour
when they were given plenty of opportunity to appeal this case and saying they want
more time. And we believe that that only deprives our client of his constitutional right
to a speedy trial.


At the same hearing, defense counsel also urged the following: 

 

 They are untimely with respect to their request for appeal, but that is an issue for the
court of appeals. Mandamus is not a remedy available to them, and, therefore we
are asking that we not have any additional delay, that the Court appoint [a
prosecutor] pro tem and that we proceed with the resolution of the pending motions
to include the motion to dismiss for want of a speedy trial . . . .


At the August 24th hearing, defense counsel re-urged the trial court to appoint a special prosecutor: "It has
been almost two years since the date of the arrest of my client. We are asking the court to appoint a special
prosecutor and continue this case so my client can have his day in court." 
3. To claim prejudice because of a missing witness, a defendant must show that: (1) the witness was
unavailable at the time of the trial; (2) the witness's testimony would have been relevant and material; and (3)
he exercised due diligence in an attempt to locate the witness. Phipps v. State, 630 S.W.2d 942, 947 (Tex.
Crim. App. 1982); Meyer v. State, 27 S.W.3d 644, 650 (Tex. App.-Waco 2000, pet. ref'd); Parkenson v. State,
942 S.W.2d 789, 792 (Tex. App.-Forth Worth 1997, no pet.). The record indicates that appellee's father is
suffering from a severe case of Alzheimer's, and since appellee's arrest, his condition has worsened. 
Appellee's housekeeper has moved to Houston, Texas, and despite the efforts of appellee, could not be
located. Both witnesses are relevant and material because they could have testified to appellee's condition
prior to his arrest. See Webb v. State, 36 S.W.3d 164, 174-75 (Tex. App.-Houston [14th Dist.] 1991, no pet.)
(holding that a defendant need only show that the prospective witness was believed to be material to the case,
not that the witness would have testified favorably to the defense). Because appellee made a prima facie
showing of prejudice, the burden was on the State to prove otherwise.