**Opinion filed January 26, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00038-CR

_____

## ISRAEL SAENZ VASQUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-40,636**

## M E M O R A N D U M   O P I N I O N

The jury found Israel Saenz Vasquez guilty of the felony offense of driving while intoxicated, subsequent offense.[1] The indictment included enhancement paragraphs for a habitual offender that, if found "true," would have increased Appellant's punishment range to confinement for not less than twenty-five years to

---

[1]Tex. Penal Code. Ann. § 49.09(b)(2) (West Supp. 2016).

confinement for ninety-nine years or for life.[2]  The trial court assessed Appellant's punishment at confinement for thirty-five years and sentenced Appellant accordingly.  In two issues on appeal, Appellant asserts that he was denied his constitutional right to a speedy trial and that the trial court imposed an illegal sentence because it failed to find the enhancement paragraphs to be "true."  We modify and affirm.

## I. *Procedural History*

On June 4, 2012, the grand jury indicted Appellant for the felony offense of driving while intoxicated, subsequent offense.  The State also alleged two enhancements for prior felony DWI offenses.  The court set bond at $25,000, which Appellant posted.  The trial court conducted a pretrial hearing and set the case for jury trial for the week of September 24, 2012.  The trial did not take place in 2012.  In 2013, the State moved to revoke Appellant's bond because he failed to comply with his bond requirements.  Appellant failed to attend the revocation hearing, and the trial court issued a capias for his arrest.  In June 2013, Appellant was arrested.  On October 10, 2014, Appellant filed a pro se motion for speedy trial.  On January 26, 2015, Appellant also filed a motion to set aside the indictment.  On January 27, 2015, the trial court denied Appellant's motion to set aside the indictment and proceeded to trial.  At trial, Appellant stipulated to two prior DWI offenses: the jurisdictional priors, not the priors alleged for habitual enhancement purposes.

## II. *Issues Presented*

Appellant asserts in his first issue that his constitutionally protected right to a speedy trial was violated because the indictment had been pending for two years and seven months before he was afforded a trial.  In his second issue, Appellant asserts

---

[2]PENAL § 12.42(d).

that the trial court issued an illegal sentence because it did not find that the allegations contained in the habitual enhancement paragraphs were "true."

### III. *Analysis*

#### A. *Issue One*: *Allegation of Speedy Trial Violation*

Appellant contends in his first issue that the trial court violated his right to a speedy trial. The Sixth Amendment to the United States Constitution affords all criminal defendants the right to a speedy trial. U.S. CONST. amend. VI. This right was made applicable to state criminal prosecutions by the Due Process Clause of the Fourteenth Amendment. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). The right to a speedy trial is afforded to criminal defendants at the time of arrest or charge. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). To determine if a defendant's speedy trial rights have been violated, courts balance the prosecution and defendant's conduct by applying four factors. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). The four factors articulated in *Barker* require the court to review (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice caused by the delay. *Barker*, 407 U.S. at 530.

We review the trial court's speedy trial determination under a bifurcated standard of review. *Cantu*, 253 S.W.3d at 282. We give deference to the trial court's factual decisions and review "factual components" for an abuse of discretion, and we review all "legal components" de novo. *Id.* "Under the abuse of discretion standard, appellate courts defer not only to a trial judge's resolution of disputed facts, but also to [the trial judge's] right to draw reasonable inferences from those facts." *Id.* We also defer to the trial court's findings of credibility and demeanor, and we view all of the evidence in the light most favorable to the trial court's ruling. *Id.*

### 1. *Length of Delay*

A speedy trial claim arises when a defendant awaits trial for an unreasonable amount of time after he is charged for a crime. *Gonzales*, 435 S.W.3d at 808–09. A post-accusation delay that approaches a year "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). If a defendant's delay is presumptively unreasonable, then the trial court continues the speedy trial analysis by evaluating the remaining *Barker* factors. Appellant testified that, after he was indicted, he was incarcerated for two separate periods, which collectively totaled more than two years, prior to his trial date in January 2015. The State concedes that this delay was presumptively unreasonable. Thus, the length of the delay will be weighed in favor of Appellant.

### 2. *Reason for Delay*

The second *Barker* factor has the trial court review the State's justification for the delay. *Barker*, 407 U.S. at 531. When analyzing this factor, a trial court gives different weight to different reasons. *Id.* For example:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Id.* (footnote omitted). While an act of bad faith by the State will almost automatically be grounds to dismiss the indictment, a negligent act does not have the same effect. *See Doggett*, 505 U.S. at 656–57. At the speedy trial hearing, the State provided no explanation for the delay. While the record indicates that Appellant changed attorneys three times before trial, there is no indication in the record that the lengthy delay was caused by Appellant's change in counsel. We weigh this

factor against the State, in spite of Appellant's change in counsel, because the prosecution has the burden to ensure that all defendants are speedily brought to trial. *See Turner v. State*, 504 S.W.2d 843, 845 (Tex. Crim. App. 1974).

### 3. Defendant's Assertion of his Speedy Trial Right

The third *Barker* factor has the trial court consider the defendant's assertion of his right to a speedy trial. The defendant's timely assertion of the right to a speedy trial is entitled to strong evidentiary weight because it demonstrates the deprivation of the defendant's speedy trial right. *Barker*, 407 U.S. at 531–32. Conversely, a defendant's delay in asserting his speedy trial right "indicates strongly that he did not really want a speedy trial." *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). Therefore, a defendant's period of inaction will weigh more heavily against a speedy trial violation the longer the delay is. *Dragoo*, 96 S.W.3d at 314. Appellant was indicted in June 2012, was re-incarcerated in June 2013, filed a motion for speedy trial in October 2014, and was tried for this felony DWI in January 2015. Appellant was incarcerated for over a year before he filed his speedy trial motion, and the State prosecuted the case shortly after Appellant's filing. Appellant's inaction weighs heavily against him because Appellant acquiesced in the delay for such a long period of time.

### 4. Prejudice Caused by the Delay

In the fourth *Barker* factor, a trial court evaluates the degree of prejudice suffered by the defendant because of the delay. *Barker*, 407 U.S. at 532. Prejudice is assessed through the interests that a speedy trial aims to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the accused's anxiety and concern; and (3) to limit the possibility of an impaired defense. *Cantu*, 253 S.W.3d at 285. The possibility of impairing the defense is the most serious because it "skews the fairness of the entire [justice] system." *Id.* (quoting *Dragoo*, 96 S.W.3d at 315).

Appellant testified at his speedy trial hearing that his lengthy pretrial incarceration had taken a "toll" on him and his "medical health." Appellant did not, however, explain how the "toll" had affected his physical or mental health. A defendant's anxiety while incarcerated is the type of harm that a speedy trial seeks to prevent or diminish. *Cantu*, 253 S.W.3d at 285–86 (citing *Zamorano v. State*, 84 S.W.3d 643, 654 (Tex. Crim. App. 2002)). "But evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Id.* at 286. Appellant did not detail his medical issues, and there is no evidence in the record to suggest that Appellant's concerns were not anything more than the type of generalized anxiety associated with a criminal charge or incarceration. Appellant also did not present any testimony that his defense was impaired due to his lengthy incarceration. Appellant also did not assert that exculpatory evidence was destroyed or impaired while he awaited trial. The record does not support Appellant's claim that the three speedy-trial interests were negatively affected by the delay. Therefore, this factor weighs against Appellant.

### 5. Balancing

Having reviewed the four *Barker* factors, we now balance their relative weights to each parties' conduct. *Cantu*, 253 S.W.3d at 281. The lengthy pretrial delay and the lack of explanation from the State for this delay weigh in favor of finding a speedy trial violation. However, Appellant did not assert his speedy trial right until more than a year after his re-incarceration and more than two years after he was indicted, which demonstrates a lack of prejudice on his behalf and weighs heavily against him. Additionally, Appellant only suffered a generalized harm while incarcerated, and the record does not reflect that his incarceration impaired his

defense. Therefore, we hold that the weight of the four *Barker* factors, balanced together, does not favor a finding of a speedy trial violation. We overrule Appellant's first issue on appeal.

### B. *Issue Two*:  *Allegation of Habitual-Offender Enhancement*

Appellant contends in his second issue that the trial court was not authorized to impose a sentence of confinement for thirty-five years because it made no findings on whether the allegations in the enhancement paragraphs were "true." Appellant asserts that the sentence was greater than the punishment range for a third-degree felony, absent a finding of "true" to the habitual enhancement paragraphs. As we explain below, we disagree with Appellant because we hold that the trial court impliedly found that the enhancement paragraphs were "true."

> 1. *Where the State has alleged a habitual-offender enhancement and the trial court assesses punishment, the trial court may impliedly find the enhancement "true."*

When the State seeks an enhancement for habitual offenders, the State has the burden to demonstrate that the allegations in the enhancement paragraphs are true. *Roberson v. State*, 420 S.W.3d 832, 839–40 (Tex. Crim. App. 2013). However, when a defendant's punishment is assessed by the trial court, the Code of Criminal Procedure does not require that the trial court read the enhancement paragraphs to the defendant and have him plead "true" or "not true." *Reed v. State*, 500 S.W.2d 497, 499 (Tex. Crim. App. 1973); *see also Adams v. State*, No. 11-05-00117-CR, 2006 WL 798922, at *2 (Tex. App.—Eastland Mar. 30, 2006, pet. ref'd) (not designated for publication). Moreover, Appellant did not object at trial that the trial court did not read the enhancements or ask for a plea of "true" or "not true"; therefore, even if the trial court was required to read the enhancements and secure a plea, which it is not required to do, Appellant waived his complaint. *See* TEX. R. APP. P. 33.1.

7

We note that an implied finding of "true" occurs when the record supports the truth of the allegations contained within the enhancement paragraph. *See Torres v. State*, 391 S.W.3d 179, 183 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Some Texas courts have found an implicit finding of "true" when the trial court's punishment was outside the statutorily prescribed range for the underlying offense but was within the punishment range for a habitual offender. *Id.* at 184; *see also Garner v. State*, 858 S.W.2d 656, 659–60 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding that the trial court implicitly found the allegations true when it sentenced the defendant to twenty-five years when the maximum punishment for the underlying crime was ten years).

Appellant argues that the appropriate statutory range for his third-degree felony offense was confinement for two to ten years. A DWI, subsequent offense, is a third-degree felony punishable by imprisonment for a term that is no less than two years but does not exceed ten years. PENAL § 12.34(a) (West 2011), § 49.09(b)(2). However, this imprisonment term is enhanced to a life term or to a term that ranges from twenty-five to ninety-nine years if the defendant was previously convicted of two felony offenses. *Id.* § 12.42(d). Although the trial court entered an "N/A" in the space for the habitual-offender enhancement finding on the judgment, Appellant's sentence could not have been given if the trial court had not determined that the allegations in the enhancement paragraphs were true.

At the sentencing hearing, the trial court acknowledged Appellant's previous criminal convictions by noting that "we're out of options except to take you off the street for a period of time" and that "[c]ertainly, nothing here has" convinced you to "turn your life around." The State also presented testimony from a fingerprint expert to demonstrate that Appellant's fingerprints were on other final judgments. The State met its burden of proof on Appellant's prior felony convictions, and the record

supports the State's argument that the trial court implicitly ruled on the enhancement allegations when the trial court sentenced Appellant to confinement for thirty-five years. We hold that there was sufficient evidence for the trial court to find the enhancement allegations to be true, and we hold that the trial court implicitly found the allegations in the enhancement paragraphs to be "true."

> 2. *This court may modify the judgment of the trial court to reflect an enhancement finding where the trial court impliedly found the enhancement "true."*

Having found that the trial court implicitly found the enhancement allegations to be true, we note that an "appellate court has the authority to modify incorrect judgments where the evidence necessary to correct a judgment appears in the record." *Harris v. State*, No. 05-02-01728-CR, 2005 WL 639388, at *2 (Tex. App.—Dallas Mar. 21, 2005, pet. ref'd) (not designated for publication); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (holding that appellate courts can modify a defendant's criminal judgment to reflect the jury's findings). Accordingly, we modify the judgment to reflect the trial court's implicit finding of "true" to the habitual-offender enhancement paragraphs in the indictment. We overrule Appellant's second issue on appeal.

## IV. *This Court's Ruling*

We modify the judgment to reflect the trial court's finding of "true" on the habitual-offender enhancement paragraphs, and we affirm the judgment as modified.

January 26, 2017                              MIKE WILLSON

Do not publish. *See* TEX. R. APP. P. 47.2(b).            JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.